JOHN WILKINSON v. THE DETROIT STEEL AND SPRING WORKS.

*Negligence—Pleading—Damages—Master and servant—Independent contractor—Nuisance.*

1. If the plaintiff in a negligence case frames his declaration on the theory that the particular ailment complained of was *produced* by the act alleged, and was the direct result of it, and produces his proofs upon that theory, and the same are repugnant to the theory of an *aggravation* of an *existing* infirmity, the defendant is entitled to have the plaintiff confined in his recovery to the scope of his allegation and proof. *Thurstin v. Luce,* 61 Mich. 292.

2. Whether the relation of principal and agent or of master and servant exists in any given case is, under proper instructions, a question of fact for the jury.

3. As between the proprietor of a building and the builder, the contract is the best evidence whether the relation between them is that of principal and agent or master and servant.

4. In this case it is held that the law imposed upon the defendant, when it exercised its lawful right of constructing a rolling-mill upon its premises adjoining a public highway, the duty towards the general public, having a right of passing along or lawfully being in that highway, to so erect said building as to render it reasonably safe, and sufficiently strong, not only to resist the strain upon the supporting timbers of the roof, but strong enough to support the roof, at all seasons, in all ordinary weather, and also under such extraordinary occurrences as were likely to arise in that locality, based upon past experience; which duty it could not avoid by employing an independent contractor to furnish the material and perform the work.

5. The exercise of reasonable care in the creation or maintenance of a nuisance can never be absolute defense to an action for an injury occasioned thereby.

6. Where questions asked expert witnesses are not objectionable in themselves, if, after the testimony is all in, any of them are based upon facts not supported by the testimony, the attention of the court should be called to such question and the point not so supported, with a request to exclude the answer based

upon such testimony, and the ruling upon such request will present a question for review in the Supreme Court.

Error to Wayne. (Gartner, J.) Argued October 9, 1888. Decided January 25, 1889.

Case. Defendant brings error. Reversed. The facts are stated in the opinion.

*Frazer, Barbour & Rexford (Levi T. Griffin,* of counsel), for appellant.

*James H. Pound,* for plaintiff.

CHAMPLIN, J. This is an action to recover damages for a personal injury to plaintiff, caused by the negligence of the defendant. In the early part of the year 1882 the defendant, which is a corporation, finished the construction of a large mill for rolling iron and steel, located at the intersection of Indian avenue and the "Chicago Road," so called, then in the township of Springwells, a suburb of the city of Detroit. It was covered with a slate roof, the center portion of which, nearly the whole length of the building, was raised above the other portion about 10 feet, forming what is called a "cupola," designed for the escape of gas and steam. On May 2, 1882, the slate roof covering the cupola split asunder in the middle, and a portion of it fell into Indian avenue, and a part upon the opposite side. The plaintiff, then a lad of eight years, was at the time in Indian avenue, near the building, and was knocked down and injured by the falling roof. In 1885 this action was brought, and the plaintiff, in his declaration, after setting forth construction of the building by defendant, and its duty to securely fasten the roof so that travelers on the streets could pass in safety, avers as follows:

"Yet, notwithstanding this said duty of the defendant

to so keep and maintain its said roof, the plaintiff avers that the said defendant did not so securely fasten and keep fastened the roof of the said defendant's manufactory as before described, but allowed it to be so constructed and kept, and maintained it in such an unsafe and negligent manner, that on said day, while the said plaintiff was upon the public highway known as 'Indian Avenue,' where he had a right to be, and was exercising due care, and without negligence on his part, the said roof separated in the center, either from a small and comparatively gentle wind, or from vapors created in said manufactory or workshop ascending to the roof, and seeking egress through said ventilator shafts, or from its own inherent infirmities; one-half of said roof, down to the main roof, sliding to each side of their manufactory down the main roof, and, reaching the verge of said roof, which was without guard of any kind, one-half fell into the street known as 'Indian Avenue,' upon which avenue said plaintiff was, and struck him, said plaintiff, completely covering him in the *debris* of said roof.

"And the plaintiff avers that by reason of the negligence and want of care of the defendant and its employés in doing business in and under and allowing such an unsafe and insecure roof to be upon its workshop or factory (of the defendant), and in not having said roof secure, as it was its duty to do, the roof fell upon the plaintiff as aforesaid, by means whereof the plaintiff was bruised, cut, and crushed on and about the head and body, his brain being injured and his body paralyzed, and his internal organs disarranged and injured, so that he has been paralyzed and subject to fits, from six to forty-two per week, for a long space of time, to wit, from thence hitherto; and that he was otherwise seriously and greatly injured, so that for a long space of time, to wit, six months, his life was despaired of, and it has ever since been very doubtful how soon the injuries before mentioned may terminate his (plaintiff's) life; and by means whereof the plaintiff became and remained sick, lame, and disordered for a long space of time, to wit, from thence hitherto; and that he is still sick, lame, and disordered; and that during all this time he has suffered and undergone great pain and suffering.

"That by means thereof he was permanently injured, his intellect impaired, and he was paralyzed in body, and

lame, and must go lame, halting, and scarred through life."

The testimony introduced by plaintiff tended to show that prior to the accident he was a healthy, robust child, and had no ailments whatever. His father and mother and brothers and sisters testify positively that up to the time he was injured by the falling roof he never had fits or showed evidence of paralysis of his side, and was not lame, but that soon after he received the injury he commenced to have fits, which had become more frequent and severe, until he was liable to have them at any time, and had as high a number as fifteen in one day; that soon after the accident he commenced to walk lame, and that his trouble had increased until his left side has become paralyzed, and his mind has become impaired, weakened, and foolish. This was the theory of the plaintiff's declaration, and his proofs were introduced in support of that theory.

The defendant gave evidence which tended to prove that the plaintiff had been subject to fits from his infancy, and that he walked lame, and dragged his left foot noticeably, and that his left side appeared to be weaker than the other, and he carried his left hand in a peculiar manner. And its theory was that the fits and paralysis were not the result of the accident, nor caused thereby; and counsel for defendant requested the court to charge the jury that if they believed from the evidence that the plaintiff had paralysis before the building fell upon him, then he cannot, under the declaration and evidence in this cause, recover for such paralysis, or any aggravation of the same produced by the building falling upon him; and if they believed that the plaintiff had epilepsy before the building fell upon him, then he cannot recover, under the declaration and proofs in this cause, on account

of such epilepsy, or any aggravation of the same produced by the building falling upon him.    These requests the court refused to charge, but instead charged the jury as follows:

"I will, however, instruct you as matter of law that if the plaintiff was affected with partial paralysis, and was subject to epilepsy, before the accident, you are not to allow him damages for such infirmities, nor are you to allow him damages for the natural and probable increase and result from such infirmities.    You must, in so far as you can, separate the results of his infirmities from the results of the accident.    It is only the accident, and the natural result of the accident, that you are to consider, if you arrive at the question of damages in this case. Should you determine that the plaintiff was affected with partial paralysis and epilepsy prior to the accident, then you are to consider and determine as to whether the accident aggravated his disease and infirmities.    This is a question rather vague, left entirely to your discretion. You want to remember—you must remember—that if you find the fact to be that his disease and infirmities were aggravated by the accident, in considering the question of damages you are only to consider the aggravation, and not the natural and probable consequences of the partial paralysis and the epilepsy.    Should you so conclude, then you want to do what is fair and right by the plaintiff, and be careful and not do any injustice to the defendant. Should you find that the accident did not aggravate ·the disease and infirmity, then you are only to consider the injury, and the temporary pain and suffering resulting therefrom, in arriving at a verdict."

We think the court erred, and that the defendant was entitled to the instructions asked for.    The plaintiff's declaration plainly alleges the fits and . paralysis to have been caused by the injury which he received by the roof falling on him.    While aggravation of an existing disease or ailment may be shown in evidence, and damages recovered therefor, in cases where the declaration is so framed as to admit of such proof, yet if the plaintiff frames his declaration on the theory that the particular ailment

complained of was produced by the act alleged, and was the direct result of it, and the plaintiff's proofs are produced upon that theory, and are repugnant to the theory of an aggravation of an existing infirmity, the defendant is entitled to have the plaintiff confined in his recovery to the scope of his allegation and proof. This was so held in *Thurstin v. Luce*, 61 Mich. 292 (28 N. W. Rep. 103), and for this error the judgment must be reversed.

As a new trial must be ordered we will notice some further questions raised by the assignments of error by defendant. The testimony showed that as soon as defendant adopted the plan it employed Mr. Brazier at a salary of $225 a month to superintend the erection of the mill, including the building; and he was there as the servant of defendant, and it was his duty to see that the building was constructed in accordance with the plan; and in the exercise of his authority as superintendent Mr. Brazier testified that all the fault he found was with a piece of timber which was rotten, and he sent it back.

Mr. Brazier also testified as to the plan adopted for this cupola; that the opening for it was 14 feet wide by 124 or 125 feet long; that the studding of the cupola was made of 6 by 6 timber, 10 feet long, placed around the ventilator opening, 10 feet apart; that the lower end of each stud was to be mortised into the main truss, and pinned to the stringer. There were to be two braces from each stud to the stringer,—a brace on each side of the stud. There was to be a cross-bar, made of 4 by 4 timber, running from each stud on one side of the ventilator opening to the corresponding stud on the other side of the ventilator opening; each cross-bar being mortised and pinned into the stud. There was also a brace running from each stud to the cross-bar. The rafters of the roof of the ventilator were to be placed in little pockets, cut for them in the timber, and fastened by

spikes.   On the rafters the cupola roof was laid, the roof being of slate.   The contract was let to Candler Bros., who were carpenters and builders in the city of Detroit, who had been in the business of building about 20 years, and were familiar with the business of constructing frames for buildings.   They agreed to construct the building according to the plans and specifications, which had been prepared by Brazier and adopted by the company.   Mr. William R. Candler testified that they did construct the building according to such plans and specifications, and when they turned it over to the Detroit Steel & Spring Works he considered it a good, proper, and suitably constructed building; that in doing the work Mr. Brazier would occasionally consult with him.

There was testimony introduced on the part of the plaintiff which tended to show that the cupola was not built in accordance with the plan and specifications which Brazier testified to as those he gave to defendant; that the studs were 4 by 4, and, instead of being mortised into the timbers upon which they stood, and secured by pins, they were simply placed upon such timbers and "toe-nailed" thereto; and instead of the collar-beams, which connected the studs on opposite sides of the ventilator, being mortised into the studs, and pinned, they were laid upon the plates and "toe-nailed" thereto, and the plates themselves rested upon and were "toe-nailed" to the top of the studs.   He also produced witnesses who testified as experts that a roof constructed as Brazier testified the plan was, which he made for defendant, would be unsafe, and still more so if "toe-nailed," as specified above.

It appears that there is a conflict in the testimony as to the manner in which the roof was constructed.   The builders testified that they built it according to the plan furnished, but do not state what the plan was.   Brazier

testified to what the plan was, but no plan is produced. Plaintiff's witnesses testify to the manner in which it had been constructed from an examination made on the day it fell, and after it had fallen. Here were questions of fact for the jury to determine. If it was built in accordance with the plans furnished, and they believed plaintiff's witnesses, then Brazier was mistaken as to the plan which he testified to furnishing. If Brazier's testimony was believed, and plaintiff's witnesses also, then the cupola was not built according to the plan testified to by Brazier. And if a material and patent change was made in the manner of construction, it was for the jury to ascertain whether Brazier was or ought to have been cognizant of a change which so materially affected the strength of the structure, and notice to him or his knowledge would be such to the defendant.

The circuit judge charged as requested by the defendant, as follows:

"If the building was planned by Mr. Brazier, and he was a competent person to prepare such plans, and if the building was constructed with suitable materials, in conformity with the plans, by Candler Brothers, and they were competent persons to so construct the building, the defendant is not liable to the plaintiff for the injury complained of." And also: "If the defendant in this case used ordinary care and prudence in selecting a competent person to prepare the plans for the building, and also in employing competent persons under contract to construct the building in conformity with such plans, and suitable materials were used in its construction, defendant is not liable. Merely good faith and reasonable prudence are all that are required of the owner of such building."

The circuit judge then added the following :

"Those are facts which you will have to determine from the evidence in this case, and it is your duty to carefully consider them. Again calling your attention separately to them, as I want to impress them upon your mind:

" 1. If the plaintiff contributed to the injury, your verdict must be, ' No cause of action.'

" 2. If Brazier was a competent person to prepare plans (and in this connection you should consider the fact of the other buildings planned by him as he testifies to, and that the plan to the building in question was similar), that it was built of good material according to such plans, by a competent person, then in that case your verdict should be, ' No cause of action.'

" 3. If Delano, acting. for the defendant, used ordinary care and prudence in selecting Brazier to prepare plans,—it was his duty to use ordinary care and prudence in selecting a competent man,— and that such plans were carried out, then your verdict should be, ' No cause of action.'

" The question as to whether Brazier was a competent person, and as to whether Delano exercised ordinary care and prudence in selecting him, you will have to determine from the testimony adduced in this case.    If you find for the defendant upon either of the propositions as I have stated . them, that is an end of the case, and you will have nothing further to consider."

While finding no particular fault with the law as thus laid down by the court, counsel for defendant insist that there is no testimony in the case tending to prove:

1. That Brazier was an incompetent person to make the plan of the building; or

2. That Candler Bros. were incompetent builders; or

3. That the .materials of which it was constructed were not good; or

4. That it was not constructed in accordance with the plans adopted.

Mr. Delano was the president of the defendant corporation ; and, when it had been determined to build the rolling-mill in question, acting in behalf of the company, he took steps to secure the services of a person capable of preparing plans and specifications of the building. Seeing the advertisement of Mr. Brazier in a publication called " The Iron Age," which periodical was devoted to the iron interests, he addressed a letter to Mr. Brazier inviting a conference.    Mr. Brazier, then residing in Kansas, went to Detroit, and presented to Mr. Delano

his testimonials from different sources, attesting his fitness and ability to prepare plans and specifications for the kind of construction required by defendant. He also stated his experience in building and superintending rolling-mills, which extended to some four or five mills in different parts of the United States, all in successful operation, and covering a period of 22 years. He prepared and presented plans for the mill to Mr. Delano, who examined and adopted them.

Complaint is made by counsel for defendant to the charges given by the court aside from those contained in the defendant's requests. He maintains that this is a case where the doctrine relative to independent contractors should be applied, and if defendant exercised reasonable care in selecting the architect who furnished the plans, and in employing competent builders, it is not liable for the injury occasioned by the falling structure.

Whether the relation of principal and agent or master and servant exists in any given case is, under proper instructions, a question of fact for the jury. The contract between the proprietor and the builder is the best evidence of the fact; and it is noticeable in this case that no written contract was introduced, but testimony was given, apparently without objection, in the most general manner, that a contract was entered into by Candler Bros. to erect the building according to the plans of Brazier. But assuming for the purposes of this case that Candler Bros. were independent contractors, and engaged to build and finish it according to certain specified plans furnished to them by defendant, and did so, still I do not think the defendant was relieved from liability under the facts of this case.

The general rule, in its broad sense, is well stated in Thomp. Neg. 899, as follows:

"One who has contracted with a competent and fit person, exercising an independent employment, to do a piece of work not in itself unlawful, or attended with danger to others, *according to the contractor's own methods,* and without his being subject to control except as to the results of his work, will not be answerable for the wrongs of such contractor, his subcontractors, or his servants, committed in the prosecution of the work."

And see section 25, pp. 902, 903, same author. There are well-recognized exceptions to the general rule, as:

1. Where the contractor is not left to pursue his own methods of accomplishing the result, but is furnished by the proprietor with plans which he agrees to execute, and the injury results from a defect in the plan.

2. When the work completed is on the proprietor's own land, and, as completed, is a nuisance, the party who employed another to do it is responsible for all the consequences, for then the maxim, "*Qui facit per alium facit per se,*" applies, as well as the maxim, "So use your own as not to injure another's property."

These exceptions appear to be supported by all the modern authorities upon the subject. Thus Andrews, J., in *King v. Railroad Co.,* 66 N. Y. 185, says:

"Whoever directs the doing of an act, which, when done, will necessarily be the creation of a nuisance, will be personally responsible for a special injury resulting therefrom to third persons, whether the act is performed by a servant or contractor."

And Peckham, J., in *Bensen v. Suarez,* 28 How. Pr. 511, 19 Abb. Pr. 61, says:

"An owner has no right to erect a nuisance on his own land to the injury of his neighbors. He cannot erect so weak and unsafe a building that it shall fall in ordinary times from its mere insecurity and insufficient strength, and thus injure the building or property of his adjoining neighbor, without being liable for that injury."

It is unnecessary to multiply citations, for the reason that the principle is founded in reason and justice. If this building fell from its inherent weakness of construc-

tion, though built according to the plan, was it a nuisance? It was located between and contiguous to two public highways. It fell after being erected four or five months, in a calm day, without any apparent cause, internal or external, except through its own weakness and inability to stand longer. I quote from Wood, Nuis. § 113:

"While a man has a right to follow his own tastes and inclinations as to the style and character of the building that he will erect upon his own land, yet he has no right to erect and maintain there a building that is dangerous by reason of the materials used in or the manner of its construction, or that is in a ruinous condition, and liable to fall and do injury to an adjoining owner or the public. Such a building on a public street is a public nuisance, and is a private nuisance to those owning property adjoining it; and if the building falls and inflicts injury upon the adjoining owners or their property, or to any one who is lawfully in its vicinity, the owner is liable for all the consequences that ensue therefrom."

John E. Sink, a witness for defendant, who had been a carpenter and joiner for over 30 years, and who was the foreman of Candler Bros. in the construction of the mill, and assisted in putting up the building, after testifying that in his opinion the plan was good, and the material sufficiently strong for such a building, and that the roof was sufficiently and strongly fastened onto the main part of the building, was asked, on cross-examination, to tell the jury why it fell if it was all right. He replied, "That is more than I can tell." He was then asked:

"If it was a pleasant day, no high winds, no explosion, and this roof fell, what would you attribute it to?"

He replied:

"If there was no explosion, no wind, or anything of that kind,—nothing to take it off,—I can't see what it would be, unless it was a weakness, of course."

The law imposed upon the defendant, when it exercised its lawful right of constructing a rolling-mill upon its premises adjoining a public highway, the duty towards the general public, having the right of passing along or lawfully being in that highway, to so erect it as to render it reasonably safe, and sufficiently strong, not only to resist the strain upon the supporting timbers of the roof, but strong enough to support the roof, at all seasons, in all ordinary weather; and also under such extraordinary occurrences as were likely to arise in that locality, based upon past experience. And this duty cannot be avoided by employing an independent contractor to furnish the material and perform the work. Here, if the testimony is believed, was a trap constructed according to defendant's plans, dangerous to human life, and liable at any time to fall upon and injure persons or property in the highway. It was a dangerous nuisance, and was being maintained by the defendant. It cannot escape liability by saying :

"It was built according to plans which I procured, by a person whom I employed. I acted in good faith, and with reasonable care, in selecting my architect and builder and therefore I have discharged my whole duty in the matter."

The reason why this is not a sufficient answer is plain. The injury does not arise from the act of the contractor during the performance of a work over which defendant had no control. It has employed a man to do a lawful thing in an unlawful manner. It employed him to construct a building which, when done, necessarily resulted in the creation of a nuisance. It not only directed the act to be done, but it maintained the nuisance until it fell, and did the injury complained of. The charge of the court proceeded upon the wrong basis as to excusing liability in a case like this. He should have instructed them that

73 MICH. 27.

if the building was so constructed by defendant, or through its directions, as to be insecure and unsafe, and of such inherent weakness as to fall without external or internal forces acting upon it, other than the ordinary forces to which it would be subject in the locality, and the business carried on in such building, it would be a nuisance, and the defendant would be liable for any injury caused thereby to any person lawfully in the public highway.

The obligation to construct a building that would be safe and secure was primary with the defendant, and could neither be delegated nor excused by employing one person to prepare plans, and another person to do the work, and resigning all control and responsibility into his hands.    The exercise of reasonable care in the creation or maintenance of a nuisance can never be an absolute defense to an action for an injury occasioned thereby.

The questions asked the expert witnesses were not objectionable in themselves.  If, after the testimony was all in, any of such questions were based upon facts not supported by the testimony, the defendant's counsel should have called the attention of the court to such question and the point not so supported by the testimony, and asked to have the answer based upon such testimony excluded.    His ruling upon such request would have presented a question for review, and this Court could then determine whether the ruling was proper or not.

For the error pointed out the judgment must be reversed, and a new trial ordered.

The other Justices concurred.