LINDSAY v. WABASH RAILWAY CO.[1]

1. ASSAULT AND BATTERY—PLEADING—VARIANCE.

An ordinary declaration in trespass vi et armis, without aver-
ment of the special facts, will justify proof of an assault and
battery by a railroad conductor on a person persisting in an
attempt to re-enter a train after being ejected for nonpay-
ment of fare; the surrounding circumstances, however, are
competent proof, and may constitute a justification of the
assault.

2. SAME—DAMAGES—MENTAL DISORDER.

A simple declaration in trespass vi et armis, alleging mere
physical injuries in the ordinary form, will not support a
claim of damages for aggravation of a mental disorder, nor
for negligence of defendant in failing to discern plaintiff's
defective mental condition before assaulting him.

3. CARRIERS—PASSENGERS—EJECTION FROM TRAIN—ASSAULT.

Where, after being ejected from a train for refusal to pay fare,
a person has boarded the train a second time and been put off,
and has seized the hand rail of the rear coach and is trying,
as the train moves away, to get aboard the third time, and
the conductor fails in an attempt to loosen his grip and push
him away, the conductor is justified in striking him a blow
sufficient to dislodge him.

4. SAME—QUESTION FOR JURY.

The conductor having lost his balance and fallen from the train
with the trespasser, whether he was justified in striking him
again while on the ground was a question for the jury de-
pendent on the circumstances.

5. ASSAULT AND BATTERY—ISSUES—ELEMENTS OF RECOVERY.

Where a declaration in trespass for assault and battery does
not claim damages for an aggravation of an existing mental
disorder, and the evidence shows that the assault was com-
mitted by a railway conductor while ejecting plaintiff from
a train for his refusal to pay fare, and was justified, with the
exception of an alleged blow given after plaintiff was off the
train, and there is no evidence showing the violence of this
blow, or that it affected plaintiff's mental condition, evidence
of plaintiff's subsequent mental condition is inadmissible.

[1] Rehearing denied January 23, 1906.

Error to Lenawee; Chester, J. Submitted April 14, 1905. (Docket No. 80.) Decided September 19, 1905.

Trespass vi ét armis by Thomas Lindsay, an incompetent, by his next friend, against the Wabash Railway Company. There was judgment for plaintiff, and defendant brings error. Reversed.

*Watts, Smith & Baldwin,* for appellant.

*John E. Bird* and *John L. O'Mealey,* for appellee.

HOOKER, J. The plaintiff's declaration is in trespass vi et armis, and alleges that he attempted to enter defendant's train at Milan, Mich., as a passenger, when one of defendant's servants, acting within the scope of his employment as conductor of said train, attempted to and did prevent his entering the train, and pulled and dragged him about, and struck him many blows with his fists, and choked him, by means whereof the plaintiff then and there became and was greatly hurt, cut, bruised, and wounded in and about his head, neck, hands, arms, and legs, and became and was sick, sore, lame, and disordered, and so remained and continued for a long space of time, to wit, one month then next following, and during all of which time plaintiff was deprived of social enjoyment with his friends, and suffered great bodily pain and distress, and was obliged to undergo medical and surgical treatment.

Defendant's brief states that there is no allegation in the declaration that the plaintiff was mentally unsound, and no claim for damage by reason of the aggravation of his mental disease occasioned by the treatment complained of. The defendant pleaded the general issue, and added a notice that, if plaintiff was assaulted, it was by reason of his persistent attempt to ride upon defendant's car without paying his fare.

The testimony given upon the trial shows that prior to May 15, 1902, plaintiff lived at St. Louis, Mo., and had

been a conductor upon the Missouri Pacific Railroad, but, showing symptoms of softening of the brain, he was discharged. On May 15, 1902, he moved with his family to Port Huron, Mich., and on May 29th he took a train at Port Huron and went to Detroit, and the same afternoon he left Detroit on the defendant's train. While occupying a seat in the sleeper the conductor asked him for his ticket, and he replied that he had none. He said he was going to St. Louis. The conductor told him that he would have to pay his fare to Montpelier, and change at that place for the St. Louis train. He then said that he had no money, and was told that he would have to get off at Milan. The train stopped at Milan, and he was asked to get off; but he did not, and the conductor lifted him to his feet, when he walked out. The porter took out his grips. The train started, but was again stopped because plaintiff attempted to get on board. When the train started again, the conductor got upon the rear platform of the diner, the last car on the train. The plaintiff took hold of the railing, and the conductor was unable to loosen his grip. The train was gaining speed, and the conductor struck him on the jaw or side of the face, and in so doing lost his balance, and both fell to the platform. The conductor got up and caught the train, which proceeded on its way. The plaintiff's counsel claim that the plaintiff was upon the first step of the car, and that the conductor struck plaintiff after they fell from the car. The foregoing is defendant's version of the affair. Plaintiff's counsel say that, when the porter saw that the plaintiff was going to try to get upon the train after being ejected, he closed the doors to the vestibule of that car, which made it impossible to get on there, but that he then got on the first step of the rear entrance of the diner, holding his baggage in one hand, and holding onto the hand rail with the other. The train was moving five or six miles an hour, when the conductor felled him by a severe blow behind the ear, and he fell upon the station platform upon his face, the conductor falling upon him. A lady witness testified that she

thought he struck him after he fell upon him. The conductor then got up and got upon the train. Plaintiff got up and sat down by a restaurant near by, pale, and with chin and knuckles bleeding. One day later, May 30th, he took the train at Milan. He did not pay his fare, and was put off at Cone. He stayed there until evening, when he took a train to Britton. He was taken from Britton to the Hotel Gregg at Adrian, where he stayed until the following Monday, when his wife took him to Port Huron, where he remained until July 11th, when he was taken to the Pontiac asylum.

The declaration contained no hint that plaintiff was an ejected passenger seeking to re-enter the cars. Neither did it indicate that he was mentally disordered, or claim damages for the causing or aggravation of any mental disorder. We are of the opinion that the simplest kind of a declaration in trespass vi et armis would have justified the proof of the encounter, and of any physical injuries inflicted upon the plaintiff, and that it was not necessary to allege in the declaration the facts of his effort to ride, his refusal to pay fare, his ejection, and persistent effort to board the train. Those matters were competent proof, and might constitute a justification of the assault; but there was no variance between pleading and proof in that regard.

It was not competent under this declaration to claim or prove damages for aggravation of a mental disorder, and, if plaintiff claimed damages for negligence of the conductor in failing to discern his infirmity, the declaration was not such as to support such claim. Plaintiff's counsel say that they disavowed a claim for such damages, and that the court did not permit their recovery.

Under the undisputed proofs in this case the conductor was justified in doing all that he did to the plaintiff, except to strike him after he fell upon the platform, if he did so. Whether or not a blow was then justifiable may have been a question for the jury, dependent upon the circumstances and emergencies of the situation.

Error is alleged upon the admission of proof from which the jury may have found that a pre-existing mental disorder was aggravated by the conductor's assault; the declaration containing no hint of such a claim. According to the proof received, the plaintiff was previously mentally disordered, in fact deranged, and became worse afterwards, and the claim was made that his disorder was aggravated by the assault. We have already seen that under the proofs the only fault that can be justly ascribed to the conductor was the blow said to have been given after the men fell from the train. Not only is it far from clear that such blow was given, and, if given, that it was not necessary or justifiable under the circumstances, but there is no proof whatever as to the character or violence of the blow, or that tends to show that it had any such effect upon plaintiff's mental condition. If there was any aggravation of such disorder, it is much more likely to have been caused by the justifiable blow dislodging plaintiff from the train than from this questionable act of the conductor upon the platform. It has been held in several cases that such proof is not admissible, and that such damages are not recoverable unless alleged in the declaration. See *Thurstin* v. *Luce*, 61 Mich. 298; *Wilkinson* v. *Spring Works*, 73 Mich. 409; *Hunter* v. *Village of Durand*, 137 Mich. 53; *Phippen* v. *Railway Co.*, 110 Mich. 351.

The court stated that "nothing was claimed, except a straight assault and battery, and that nothing could be claimed for plaintiff's mental condition; that he stood there in the case as if he were mentally sound." Yet his mental condition both before and after the occurrence was shown, and a physician was permitted to testify, in substance, that a blow on the head would be likely to aggravate the disorder.

It is urged that it was competent to show his previous condition and appearance as affecting the question of the reasonableness of the conductor's conduct; but, if this be so, it was not competent to show plaintiff's subsequent

condition by the hotel keeper who saw him two days later, or to make such proof as that given by the physician referred to.

There are other assignments of error, but we think it unnecessary to discuss them, as the question may not arise upon another trial.

The judgment is reversed, and a new trial ordered.

MOORE, C. J., and CARPENTER, MCALVAY, and OSTRANDER, JJ., concurred.