Argued June 4, reversed August 2, petition for rehearing denied
October 17, 1963

AMERICAN RECIPROCAL INSURERS *v.*
BESSONETTE ET AL
384 P. 2d 223
385 P. 2d 759

508

*Richard E. Miller,* Eugene, argued the cause for appellant. With him on the briefs were Robert E. Moulton, Eugene and Robert J. Johnston, Portland.

*William G. Wheatley,* Eugene, argued the cause for respondents. On the brief were Jaqua & Wheatley, Eugene.

Before McAllister, Chief Justice, and Rossman, Perry, Sloan, O'Connell, Goodwin and Denecke, Justices.

SLOAN, J.

We could not improve upon appellant-plaintiff's statement of this case taken from its brief:

"This appeal involves an action of law for damages tried by the court sitting without a jury.

"The owner, hereinafter referred to as the Lafferty partnership, contracted with defendant (this should be defendants) Bessonette and Graff to erect a grocery warehouse and with defendant Pacific Automatic Sprinkler to install a sprinkler system. Defendant Bessonette and Graff * * * caused a concrete wall to be constructed so as to cause a main sprinkler pipe to break after the building had been completed and accepted. Water under great pressure in the pipe escaped and damaged the building. The tenant, Lefferty-Pioneer Corporation, had groceries stored in the warehouse which were damaged. Plaintiff insured both the partnership and the tenant corporation and is subrogated to their claims.

"The court granted an order of involuntary nonsuit to the contractor which built the sprinkler system.

"After trial, the court found defendant Bessonette and Graff negligently and proximately caused the damage complained of, but not responsible for the injury to the tenant for lack of privity. Judg-

ment was entered accordingly against defendant for damages to the building only. Appeal is against defendant Bessonette and Graff only."

Decision in this case is governed by the recent case of *Strandholm v. General Construction Co.*, decided June 12, 1963, 235 Or 145, 382 P2d 843. Obviously, the trial judge did not have the advantage of the decision in *Strandholm* when he decided this case, nor did counsel at the time the case was submitted here.

It is claimed that even though the privity of contract doctrine may not apply to manufacturers and the like, it should apply to building contractors. We think such a distinction cannot be justified. See text and cases cited in 1 Products Liability, 1960, Frumer & Friedman, § 5.03(2), page 37, and Prosser, Torts, 1955, § 85, page 517-19; *Hanna v. Fletcher*, 1956, 97 App D.C. 310, 231 F2d 469, 58 ALR2d 847. And, it is held that the lapse of time which may exist between the time of negligent construction and eventual injury is a factor for the jury to consider in determining the causal connection between the negligence and the injury. *Leigh v. Wadsworth*, 1961, Okla, 361 P2d 849; *Hale v. Depaoli*, 1948, 33 Cal2d 228, 201 P2d 1, 13 ALR2d 183; *Begley v. Adaber Realty & Investment Company*, Mo, 358 SW2d 785; and see the excellent opinion by Judge Murrah in *Pryor v. Lee C. Moore Corporation* (USCA 10th Cir 1958), 262 F2d 673, which overruled a prior case (*Lynch v. International Harvester Co.* (CCA, 10th Cir 1932), 60 F2d 223) in the same circuit; 1 Products Liability, 1960, Frumer & Friedman, § 11.03.

After the trial judge had found that defendants were factually liable he denied any of the damage suf-

fered by the tenant because of the lack of privity. The *Strandholm* case holds that there was a duty in spite of the lack of privity, so this case must be reversed. Inasmuch as the only issue now left undetermined is that of damages the cause is remanded for the purpose of finding the amount thereof. *Scott et al v. Lawrence Whse. Co.*, 1961, 227 Or 78, 101, 360 P2d 610.

ROSSMAN, J., dissenting.

I do not believe that this case calls for the statement of the legal principles which govern the liability, if any, of a contractor to a person who, after completion of the building, becomes one of its tenants and later claims that through defective construction of the building he sustained damages.

In this case the persons whose rights are under analysis are the following: (1) the owners, (2) a lessee of the owners, (3) the general contractors, that is, the defendants who constructed the building, (4) another contractor who, under contract directly with the owners, installed the sprinkler system, and (5) the plaintiff, an insurance company which paid to the owners and the lessee damages that they incurred when water entered the building and who now claims that it is subrogated to the rights of the owners and the lessee.

The plaintiff claims that (1) it was the insurer of the owners of the building and one of the lessees, (2) a water pipe which lay under the floor of the building broke when the building settled, (3) the owner and the lesee were damaged when water entered the structure, (4) obedient to the terms of the policies of insurance which it had written, it paid the owners and the lessee the amounts of their damages, and (5) it became

subrogated to the rights of the owners and the lessee against the contractor.

The circuit court awarded the plaintiff nothing on account of the sum which it had paid to the lessee, but awarded to the plaintiff judgment for the amount it had paid to the owners. The plaintiff challenges on appeal the refusal of the circuit court to grant judgment against the contractor, that is, the defendants, for the amount the plaintiff had paid to the lessee. The opinion of the majority reverses the judgment as to the lessee's claim and remands the case so that judgment may be entered for the loss that the tenant sustained. I am satisfied that the pleadings contain no averments whatever which permit the entry of judgment for the tenant's loss. The transcript of evidence is not before us. We have only the pleadings and the findings. Neither warrant the action which the majority is taking. A legally sufficient complaint must always precede the entry of judgment. A wrong must have been done by the person against whom a court is asked to enter judgment.

There is a material distinction between a transaction in which one buys an article, such as an automobile, that later proves to be defective and another transaction in which he contracts for the construction of a building. When one buys an automobile, the latter is a finished product which stands before him and which he may see. It was not built according to any plans, specifications or directions which he gave.

Before a building contractor starts his work, the building is only a subject of contemplation. Possibly nothing more tangible than preliminary plans exist at that point. If the preliminary discussions are favorable, an architect will prepare plans and specifications. Then will come the bids and if one of them

is satisfactory, a contract will be drafted which later will be signed by the owner and the contractor. The contract always incorporates within itself the plans and specifications. It requires the contractor to build the structure as designated in the plans and specifications. It likewise provides that the owner must accept and pay for the structure if it is built in accordance with the plans and specifications. Still later, when all construction work has been completed, the architect will certify to the owner, if the contractor was faithful to his contract, that the contractor has abided by his contract, that payment should be made, and the building should be accepted.

The basic legal principle which governs transactions concerning a finished product is the law of sales. The basic legal principle which governs the construction of a building is the law of contracts.

It may be that through an occurrence for which the contractor is not responsible, such as settling of the building, a defect develops and someone sustains injury. Possibly, the person who sustained injury was not a party to the contract between the owner and the contractor. A development of that kind projects the type of issue that is now before us. It should not be settled by over simplification. The contract must receive attention. We should not merely inquire whether the contractor was negligent; we must give attention to the contract.

In the case at bar, the lessee did not sign the building contract. The plaintiff, that is, the insurance company, wishes this court to hold that the contractor owed a duty to the lessee one and one-half years after the owner had accepted the building. In my opinion, the complaint wholly fails to allege any basis for a duty of that nature; and therefore I do not believe

that the issue is before us. I think that we should not reverse the challenged judgment.

The plaintiff itself recognizes the challenge to the sufficiency of the complaint. It wishes to use the complaint as the basis for obtaining judgment for the purported loss sustained by the lessee. Its own brief states:

> "The claimed pleading deficiency must be reviewed within the framework of the general rules promulgated in times past by this court when pleadings were examined.
>
> *　　　*　　　*
>
> "Proceeding then to the questions relating to the trial record, we conceive the defendants contend the failure to overtly allege the existence of a dangerous condition, the foreseeability of the consequences, the knowledge of danger and the lack of knowledge on the part of the contractor, render the complaint fatally defective."

Now, let us see whether the complaint charges the defendants with either of the following: (1) the breach of any phase of the contract into which the defendants and the owners had entered resulting in the breaking of the pipe, or (2) the construction of a building which was dangerous.

The complaint alleges that:

> "* * * on or about July 20, 1955, defendants Bessonette and Graff, entered into an agreement in writing with a partnership doing business as R. A. Lafferty & Sons of Oregon, Ltd., for the construction of a concrete and steel warehouse building to be erected * * * in accordance with the plans that had been prepared by W. E. Mackie, Architect * * * That said agreement specifically provided that it did not include the construction of the fire sprinkler system for said building by defendants, Bessonette and Graff."

Thus, we see that the complaint itself alleged that the parties entered into "an agreement in writing" for the construction of this building according to plans "prepared by W. E. Mackie, Architect."

It is next alleged that the owners "entered into a separate agreement" with a corporation known as Pacific Automatic Sprinkler for the construction of the sprinkler system.

Another paragraph of the complaint alleges that the defendants, in compliance with their agreement as the general contractors, constructed a concrete wall within the building "which separates the drug repack room from the warehouse proper." The complaint describes the function of this wall as being not only to separate the structure into two parts but also to support partially the roof.

Continuing, the complaint avers:

"Pacific Automatic Sprinkler constructed a sprinkler system in said building. That lying under said hereinabove described wall and at approximately right angles to said wall running in a generally north and south direction and under the concrete floor of said building was an eight inch water pipe which pipe was an integral part of said sprinkler system. That on October 26, 1957, said pipe was filled with water. That said pipe lies under the concrete floor."

The complaint further states:

"Some time after said wall was constructed and on or before October 26, 1957, said wall settled and bore down upon said water line, so as to cause said line to be broken. That the water in the said line escaped and seeped into said building damaging goods, wares and merchandise."

The following constitute the specific charges of negligence that the complaint makes:

"That the defendants, Bessonette and Graff, were careless, reckless and negligent in the following particulars, to-wit:

"1. That they constructed and permitted to be constructed said wall without providing any supporting or cushioning material between said pipe and wall.

"2. That they constructed and permitted to be constructed said wall so that in the settling of the wall it would rest down and upon said pipe with great weight.

"3. That said construction was in violation of an ordinance of the city of Eugene, Lane County, Oregon known as Fire Prevention Code and being more particularly described as Ordinance No. 9228 section (2) which became effective on September 28, 1948, which required that automatic sprinkler systems be installed, constructed and safeguarded in standard, modern and approved manner. That said standards require a clearance or packing between pipe and wall."

The above constitutes every part of the complaint that makes an attempt to charge the defendants with liability. I have omitted nothing. There is no charge that the defendants deviated in the slightest degree from the contract which they had signed with the owners for the construction of this building. The truth of the matter is that after the complaint alleged the contract it proceeds wholly to ignore it. But after once having averred the contract, the latter governed the construction of the building and prescribed the defendants' duties. If the defendants performed all that the contract exacted of them and did everything for which they were paid, they owed no additional duties. The complaint contains no allegation that the defendants were responsible for the settling of the

building. There is nothing that charges that the defendants constructed the building in breach of their contract and thereby caused the building to settle. Yet, unless through breach of their contract the building settled, the defendants cannot be liable for the break of the pipe. Although the second division of the complaint last quoted alleges that the defendants "constructed said wall without providing any supporting or cushioning material between said pipe and wall," there is no allegation that the contract required them to provide "supporting or cushioning material between said pipe and wall." Nor does the complaint aver that they did not construct the wall in the precise place and exact manner that was prescribed in the contract, plans and specifications.

It appears from the complaint, as we have seen, that the pipe which broke had been placed by Pacific Automatic Sprinkler before the defendants began the construction of the wall. Obviously, since there were plans and specifications that governed the construction of the building, Pacific Automatic Sprinkler must have known that the defendants were required to build a wall at that place. Accordingly, a belief is warranted that it was the duty of the sprinkler company to place the pipe deep enough into the ground or protect it with "supporting or cushioning material" so that when the wall was constructed over the pipe the latter would not be harmed. Or the defendants would surely be warranted in a belief that since the sprinkler company placed the pipe at a spot where a wall would be erected, it chose a pipe sufficient in strength to withstand the pressure.

The complaint does not indicate how far below the bottom of the wall the pipe lay. The complaint discloses no information upon that subject. The City

of Eugene, that being the municipality in which the building was built, has an ordinance, so this paragraph of the complaint alleges, which requires that "automatic sprinkler systems be installed, constructed and safeguarded in standard, modern and approved manner." That series of conclusions adds nothing to the pleadings. Then the paragraph adds, "That said standards require a clearance or packing between pipe and wall." But the complaint fails to allege the amount of "clearance or packing between pipe and wall" that is required by the ordinance, nor does it allege that the amount that was actually provided was less than the ordinance demanded.

The above is the complaint. The defendants' duties were governed by a contract unless they built a structure dangerous to those who might come into contact with it. The complaint nowhere charges that this building was dangerous. It does not use those words or any equivalents of them. It is true that the complaint makes the general charge of negligence which I quoted, but the defendants are not liable to the lessee unless they (1) breached their contract or (2) built a structure which was dangerous. There is no averment that the defendants breached their contract or constructed a building that was dangerous.

The complaint is evidently based upon a theory that a contractor is an insurer that the structure which he builds will last into the indefinite future, and that if it settles—even due to no deviation from the contract—he will pay damages. Such is not the law.

*Haberly v. Farmers Mutual Fire Relief Association,* 135 Or 32, 293 P 590, 294 P 594, states:

"It is neither a new nor strange doctrine that in actions at law there must be a pleading to support a judgment."

518

The complaint in the case at bar affords no basis whatever for reversing the challenged judgment and granting relief to the plaintiff for the lessee's loss. The newly developed branch of jurisprudence which the majority invokes is of recent origin. Under the facts as above reviewed, the majority extends this new rule so as to render the contractor liable even in the absence of negligence. I do not believe that such is the law. Before embracing this new development in the law, we should await a case presenting more favorable circumstances.

I dissent.

## ON REHEARING

On respondents' petition for rehearing.

John E. Jaqua, Eugene, for the petition. With him on the brief were Jaqua & Wheatley, Eugene.

Hugh L. Barzee, Portland, filed a brief amicus curiae on behalf of The Associated General Contractors of America, Inc. With him on the brief were Barzee, Leedy & Tassock, Portland.

SLOAN, J.

In their petition for rehearing defendants overlook a most significant statement in the original opinion. That statement was: "After trial, the court found defendant[s] Bessonette and Graff negligently and proximately caused the damage complained of, but not responsible for the injury to the tenant for lack of privity." It seemingly needs to be emphasized that, for the purpose of this appeal, negligence and causation were admitted. We were presented with the legal problem: Was lack of privity of contract a defense? We held that it was not.

The rule adopted by most of the courts that have more recently considered the question is that a contractor is liable for a breach of the standard of reasonable care and that the lack of privity of contract between the parties is not a defense. *Cosgriff Neon Company v. Mattheus*, 1962, 371 P2d 819.

The brief of amicus appears to express misgivings that contractors may be held liable without a showing of negligence. This was not the basis of our ruling

in this case. Evidence of a lack of due care upon the part of the contractor must, of course, be submitted to bring a case within the ambit of our opinion herein.

The petition for rehearing is denied.

ROSSMAN, J., dissents.