Argued May 2, reargued September 7, reversed and remanded
December 20, 1967, petition for rehearing denied
February 13, 1968

MACOMBER, *Respondent and Cross-Appellant,*
*v.* COX, *Cross-respondent,*
NORTHWESTERN CONSTRUCTION OF
WASHINGTON, INC., ET AL, *Appellants.*
435 P. 2d 462

*John H. Kottkamp,* Pendleton, argued the cause for appellant Northwestern Construction of Washington and cross-respondent Donald H. Cox. On the briefs were Kottkamp & O'Rourke, Pendleton.

*George G. VanNatta,* St. Helens, argued the cause and filed a brief for appellant C. T. Black.

*Harold A. Fabre,* Pendleton, argued the cause for respondent and cross-appellant George Macomber. On the briefs were Fabre, Collins & Ehlers, Pendleton.

Before PERRY, Chief Justice, and McALLISTER, SLOAN, O'CONNELL, GOODWIN, DENECKE and HOLMAN, Justices.

O'CONNELL, J.

This is an action to recover damages for personal injuries suffered by plaintiff when a light fixture fell from the ceiling of a building owned by defendant Cox. Cox had engaged defendant, Northwestern Construction of Washington, as general contractor to construct the building. Northwestern in turn employed defendant Black, an independent contractor, to do the electrical work, including the installation of lighting fixtures. The building was a part of a service station. Plaintiff was the tenant of Cox and operated the service station. The court allowed a motion for a directed verdict in favor of defendant Cox. Defendants Northwestern and Black appeal from a judgment against them. Plaintiff has cross-appealed from the judgment in favor of Cox.

We shall first consider Northwestern's appeal. Northwestern assigns as error the giving of an instruction which, in essence, told the jury that Northwestern would be negligent if it failed to inspect the work of defendant Black after the latter had completed it.[1] Northwestern contends that this instruction

[1] The instruction was as follows:

"* * * If you find that the defendant Northwestern Construction Company employed the defendant C. T. Black to install the electrical fixtures in the service station building in question in this case, then there would be a duty on the part of the defendant Northwestern Construction Company to use such care as the circumstances may reasonably require of it to exercise in order to ascertain whether the building or the parts thereof to be constructed by the defendant Black were in a reasonably safe condi-

charged it with a breach of duty which was not alleged in the complaint. The complaint alleged as follows:·

> "That in the course of said construction· project, the defendants carelessly and negligently installed said light fixture in said premises and failed to securely or properly fasten the same to said ceiling * * *."

On the morning of the first day of trial plaintiff attempted to add a new specification of negligence alleging that "said defendants and each of them failed to properly supervise and inspect the installation of said light fixture * * *." The motion to amend the complaint was denied.

■ Plaintiff now contends that even without the proposed amendment the complaint was sufficient to charge defendant Northwestern Construction with negligence in failing to inspect the installation of the light fixture. We do not agree. If the complaint had alleged that the fixture was negligently installed and stopped there, an argument might be made for construing the word "installed" broadly enough to embrace the inspection of the fixture after it was affixed to the ceiling. But the language of the complaint which follows the term "installed" makes it clear that the pleader did not use the term in this broad sense and intended only to relate the negligence of defendants to their failure to "securely or properly fasten the same to said ceiling * * *." This allegation would not

---

tion after the work of the defendant Black was completed. If you find that the Northwestern Construction Company failed to use such care and that such failure was the proximate cause of the injury to the plaintiff, then you may find that the defendant Northwestern Construction Company was negligent with respect to this duty and a verdict can be returned against them."

give Northwestern Construction notice that it should prepare its case on the theory that it failed to inspect.

Since the instruction permitted the jury to find defendant Northwestern Construction liable for negligent conduct not alleged in the pleadings there was reversible error.

Plaintiff contends that Northwestern Construction, the general contractor, is liable for the negligence of its subcontractor, Black Electrical Company, even though Northwestern Construction itself is free from negligence. Black Electrical Company stood in the relation of independent contractor to its employer, Northwestern Construction. The general principle is that "the employer of an independent contractor is not subject to liability for bodily harm caused to another by a tortious act or omission of the contractor or his servants."[2] A variety of exceptions have made inroads upon this rule of immunity (e.g., when the employer's duty is non-delegable) but the present case does not fall within any of these exceptions.[3] Plaintiff urges us to go beyond the exceptions and to adopt a general rule imposing strict liability upon general building contractors for the negligence of their subcontractors. Support for this view can be found in a few recent cases.[4] These cases reason that a building contractor

---

[2] Restatement (Second) of Torts § 409 (1965).

[3] The exceptions are discussed in 2 Harper & James on Torts, § 26.11, pp. 1405 et seq. (1956); Prosser on Torts (3d ed 1964) pp. 481 et seq.; Restatement (Second) of Torts §§ 410-429 (1965).

[4] Dow v. Holly Manufacturing Co., 49 Cal2d 720, 321 P2d 736 (1958); State Stove Manufacturing Co. v. Hodges, 189 So2d 113 (Miss 1966) commented on in 28 Ohio St. L J 343 (1967); Schipper v. Levitt & Sons, Inc., 44 NJ 70, 207 A2d 314 (1965).

In support of the view that strict liability should be imposed upon building contractors see Brown, Building Contractor's Liability After Completion and Acceptance, 16 Clev Mar L Rev 193 (1967); 28 Ohio St L J 343 (1967).

is in essentially the same position as a supplier of chattels and that, therefore, the rules developed in the products liability cases should be made applicable.[9] Conceding, without deciding, that the analogy is sufficiently close to require the application of the rules of products liability, it does not follow that liability should be imposed upon Northwestern Construction in the present case.

The cases which have drawn the parallel between the general contractor and the supplier of chattels in imposing strict liability upon the general contractor have adopted the broad principle of enterprise liability first expressed in *Escola v. Coca Cola Bottling Co. of Fresno*, 24 Cal2d 453, 150 P2d 436 (1944) and later adopted by a growing number of courts. But Oregon did not join in this extension of liability. In *Wights v. Staff Jennings*, 241 Or 301, 309, 405 P2d 624 (1965) we said that "the enterprise liability rationale employed in the *Escola* case proves too much and that if adopted would compel us to apply the principle of strict liability in all future cases where the loss could be distributed." We recognized that strict liability could be imposed upon the seller in appropriate cases through the application of established tort principles and we held applicable to the

---

[9] Dow v. Holly Manufacturing Co., supra note 4; cf., Prosser on Torts, pp 692-96 (3d ed 1964).

In the *Dow* case the court also states that "There is no reasonable distinction between the owner's inability to escape liability and that of the contractor." (p. 739) It appears, however, that the court did not intend to extend the liability of the contractor beyond that normally imposed upon the landowner for a dangerous condition resulting from work done by an independent contractor under the exceptions to the employer's liability as stated in Restatement of Torts §§ 410-429.

We discuss the limits on the landowner's liability for acts of an independent contractor in the latter part of this opinion, particularly with respect to the lessor's liability to his lessee.

*Wights* case the principle which imposes liability for harm resulting from the creation of an ultrahazardous condition.

Upon the same reasoning it could be argued that strict liability should be imposed upon the general contractor for the construction of a building in a defective condition unreasonably dangerous to the user, applying by analogy Restatement (Second) of Torts § 402 A.[⑥]

But the condition created in the present case was neither ultrahazardous nor unreasonably dangerous within the accepted meaning of those terms. Likewise, none of the other exceptions to the rule of immunity of the employer for the negligence of an independent contractor is applicable.

Plaintiff relies upon *Strandholm v. General Construction Company,* 235 Or 145, 382 P2d 843 (1963) and *American Reciprocal Insurers v. Bessonette,* 235 Or 507, 384 P2d 223, 385 P2d 759 (1963). Neither of these cases is in point. In each of these cases the defendant contractor's liability was predicated upon his own negligent conduct. Those cases cannot be made to stand for the proposition that a contractor is strictly

---

[⑥] Restatement (Second) of Torts § 402 A (1965) reads as follows:

"(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

"(a) the seller is engaged in the business of selling such a product, and

"(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

"(2) The rule stated in Subsection (1) applies although

"(a) the seller has exercised all possible care in the preparation and sale of his product, and

"(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller."

liable for the negligent conduct of an independent contractor.

Nor is the present case to be confused with *Waterway Terminals v. P. S. Lord,* 242 Or 1, 406 P2d 556, 13 ALR3d 1 (1965). In that case Mechanical Handling Systems contracted to construct six cargo lifts for the plaintiff. Mechanical subcontracted the job of installing the lifts to Colby, who in turn subcontracted the work to Lord. Lord negligently set fire to plaintiff's docks in the course of carrying out the work. We held that the general contractor, Mechanical Handling Systems, was liable to plaintiff for the damage caused by Lord because plaintiff had hired and relied upon Mechanical to perform the work, and that "it could not avoid its responsibility for injury resulting from the negligent performance of its obligation by engaging a subcontractor to supply the lifts which in turn engaged another subcontractor to install them." 242 Or at 61. Thus it is seen that the defendant's liability in *Waterway Terminals* rested upon a duty arising out of a contract, an element entirely absent in the case at bar.

Since, under the pleadings and proof, Northwestern Construction could not have been held liable upon the ground that it was negligent, the trial court should have granted Northwestern's motion for a directed verdict.

There is no merit in any of the assignments of error submitted by defendant C. T. Black and therefore the judgment as to Black is affirmed.

█ Plaintiff cross-appeals from the judgment in favor of Cox, contending that the trial court erred in granting the motion for a directed verdict in favor of Cox. It is plaintiff's position that defendant Cox is subject to the same liability as though he had installed

the electrical fixtures himself and thus Black's negligence is imputed to Cox. Plaintiff relies upon Restatement (Second) of Torts § 422 (1965), which is one of several sections stating the duty of the possessor of land to persons on or outside of the land for physical harm caused by the unsafe condition created by the independent contractor.[7] This section does not purport to state the duty of the lessor to his lessee for physical harm resulting from the condition of the premises existing when the lessor transfers possession.[8] The rules applicable to the lessor-lessee relationship are

---

[7] Restatement (Second) of Torts § 422 (1965) reads:
"A possessor of land who entrusts to an independent contractor construction, repair, or other work on the land, or on a building or other structure upon it, is subject to the same liability as though he had retained the work in his own hands to others on or outside of the land for physical harm caused to them by the unsafe condition of the structure

"(a) while the possessor has retained possession of the land during the progress of the work, or

"(b) after he has resumed possession of the land upon its completion."

[8] Even if we accepted plaintiff's contention that Restatement (Second) of Torts § 422 (1965) applies to the lessor-lessee relationship, Cox did not "resume possession of the land upon the completion of the work." (§ 422(b) ). Plaintiff had taken possession prior to the date upon which Northwestern and Black had completed their work. See Connolly v. Des Moines Investment Co., 130 Iowa 633, 105 NW 400 (1905); Gorham v. Gross, 125 Mass 232, 28 AR 224 (1878); Wilkinson v. Detroit Steel and Spring Works, 73 Mich 405, 41 NW 490 (1889); McCrorey v. Thomas, 109 Va 373, 63 SE 1011 (1909). Moreover, it is our view that § 422(b) is not to be read literally to mean that in every resumption of possession by the employer of a contractor he "is subject to the same liability as though he had retained the work in his own hands." We read the section to mean only that the employer is still under a duty to exercise reasonable care to see that the structure is in a reasonably safe condition, even though he had previously placed an independent contractor in exclusive possession of the premises. Cf., Harper & James on Torts, § 26.11, p. 1407, n. 50 (1956). The employer's duty in this regard is stated in Restatement (Second) of Torts § 412 (1965), which requires the employer to subject the work after completion to such an inspection as is reasonable under the circumstances.

stated in Restatement (Second) of Torts §§ 356-362 (1965). The lessor is liable to the lessee for physical harm resulting from a dangerous condition on the premises existing at the time of the transfer of possession only if "the lessor knows or has reason to know of the condition."[9] There was no evidence that Cox knew of the dangerous condition of the premises in the present case and plaintiff did not plead or prove that Cox was negligent in failing to inspect the premises. The trial court properly directed a verdict for defendant Cox.

We have examined all of the other assignments of error and find them without merit.

The judgment is reversed and the cause is remanded with directions to enter judgment for defendant Northwestern Construction of Washington, Inc., and to affirm the judgment in favor of defendant Cox and the judgment against defendant C. T. Black.

SLOAN, J., dissenting.

The majority opinion will create more problems than it solves. It states that the cases, principally the leading case of *Dow v. Holly Manufacturing Co.*, 1958, 49 Cal2d 720, 321 P2d 736, "reason that a building

---

[9] Restatement (Second) of Torts § 358 (1965) reads in part:

"(1) A lessor of land who conceals or fails to disclose to his lessee any condition, whether natural or artificial, which involves unreasonable risk of physical harm to persons on the land, is subject to liability to the lessee and others upon the land with the consent of the lessee or his sublessee for physical harm caused by the condition after the lessee has taken possession, if

"(a) the lessee does not know or have reason to know of the condition or the risk involved, and

"(b) the lessor knows or has reason to know of the condition, and realizes or should realize the risk involved, and has reason to expect that the lessee will not discover the condition or realize the risk. * * *"

contractor is in essentially the same position as a supplier of chattels and that, therefore, the rule developed in the products liability cases should be applicable." The majority then hold that since this court, in *Wights v. Staff Jennings,* 1965, 241 Or 301, 405 P2d 624, rejected the distribution of loss doctrine in deciding products liability cases we should reject holding defendant liable for the negligence of the subcontractor.

This is simply not the basis for the decision in the *Dow* case. The rationale of the *Dow* case is based on the responsibility and control of the general contractor. The *Dow* case held the contractor to the responsibility to deliver a sound finished product. This is clearly stated in the opinion:

> "It has been held that the *owner* of property cannot escape liability for a dangerous condition on his property by having an independent contractor assume the duty of constructing or repairing a building or chattel. Knell v. Morris, 39 Cal.2d 450, 247 P.2d 352; Brown v. George Pepperdine Foundation, 23 Cal.2d 256, 143 P.2d 929; Snyder v. Southern Cal. Edison Co., 44 Cal.2d 793, 285 P.2d 912. There is no reasonable distinction between the owner's inability to escape liability and that of the contractor. The contractor, equally with the owner of the property, has supervision over the entire building and its construction, including the work performed by a subcontractor, and where he negligently creates a condition, either by himself or through a subcontractor, he is primarily responsible for that condition and the consequences that may follow from it. He is in full control of the construction and knows or should know what is being placed in the building. Indeed, what is placed there is peculiarly within his knowledge, and where, as here, it involves a defective appliance which is covered and hidden by the walls in the course of

construction, the responsibility for such defect should rest upon him as well as on the subcontractor." *Dow v. Holly Manufacturing Co.*, 1958, 49 Cal2d 720, 321 P2d 736, 739.

That is the reason for finding liability in the *Dow* case.

It is true, of course, that the quoted language is followed by this reference to the supplier of chattel cases:

> "There is also a close analogy between a supplier of chattels and a general contractor for the construction of a building. The contractor supplies all of the materials used as well as the labor either by fabricating it himself, buying it from another or having an independent subcontractor do the same thing. The owner in effect buys a properly completed building from the contractor which the contractor is bound to supply. In the case of the supplier of chattels when he supplies the goods it is immaterial to his liability that he may have had another supply the product; he is nevertheless liable because he has vouched for the chattels as his own by taking the contract. The same is true of a house where he supplies many parts, as well as labor, most of which are probably not fabricated by him but by independent contractors or sellers. * * *." *Dow v. Holly Manufacturing Co., supra,* at page 739.

But that analogy to the products liability cases is strictly related to the immunity question. It is not a statement of the basis of the contractor's liability.

More importantly, the concepts of a strict enterprise liability, as rejected in *Wights v. Staff Jennings, supra,* is an ill-fitting standard to test the problem here. The basis of the liability rejected in *Wights* was stated to be: "The broad proposition is stated by Professor Fleming James, Jr., as follows: '* * * Strict

liability is to be preferred over a system of liability based on fault wherever you have an enterprise or activity, beneficial to many, which takes a more or less inevitable accident toll of human life and limb. This is true at least where the accident victims are as a class economically ill-equipped to carry the burden of serious accident losses. * * * ' " 241 Or at p 308, 405 P2d at p 628. The quotation continues in this familiar pattern.

The theory has been more succinctly stated in a note at 54 Cal L Rev at 1707-08 (1966), which says: "The most generally accepted argument advanced in support of absolute liability on the part of a manufacturer* is nothing more than a distillation of the theory of risk distribution through the price structure which Professor Ehrenzweig* and Justice Traynor* were advancing a decade ago." (* Footnotes omitted).

It should be perfectly obvious that this reasoning, this theory of liability is wholly inapplicable to the reasons for and the limit of liability that should·be imposed on the general contractor in the usual building contractor's case.

The idea of spreading the risk, of compelling the enterprise to bear its accident burdens, the deep pocket approach has nothing to do with the reasons that would support a policy of imposing liability on the prime building contractor. The very nature of the function of the building contractor and his relationships to the other involved parties precludes any consideration of a "price structure" that permits widespread distribution of the risk.

The general or prime contractor's function, in modern building, is to assemble a large and complex group of subcontractors, to coordinate their work and to be responsible for it. This is what he is paid for. In

today's more complex and sophisticated building, the prime contractor frequently performs no building function at all. His sole function is to assemble the many skills required to build a complete building and to oversee the function of each. He selects the subcontractors, he imposes on them contract terms of his own choosing. Or, as stated in the *Dow* case, he is free to do all the work with his own employees. And, when fault in the building does appear, it is frequently impossible, accordingly, to find which skill represented by which subcontractor or by which sub of a sub, was responsible. The damaged third party, like the innocent tenant in this case, should be able, like the owner, to look to the one responsible person to right the injury and harm. The damaged party should not be relegated to the chore of endeavoring to find the culprit who may have omitted or committed the act which caused the fault.

And, if there is need to spread the risk, the contractor can do so by his own contract with the subcontractor. He at least has that choice. The damaged third party has the choice of being bounced from party to party, hoping he may find the right one.

The buck should not pass beyond the general contractor, not as a matter of enterprise liability but because of inherent responsibility. This, in reality, is what the courts have done in following *MacPherson v. Buick*. The responsibility has been moved from the hapless local purveyor and placed where it belongs. Some day, belatedly, this court will follow the trend and eliminate the immunity windfall of the prime contractor.

If the court desires to rigidly adhere to the doctrine of immunity and its many exceptions as found in Chapter 15, Restatement (Second) of Torts, it should

say so. Presumably, the court is now saying that the ultimate rule, which will eventually be decided by this court, to govern the liability of the manufacturers, etc. of chattels will also govern the liability of a building contractor for the negligence of a subcontractor. The problem is, and the confusion and uncertainty will be, that the lawyer and the courts will not know how a case should be framed; shall the lawyer prepare his case and evidence within the tests of the Restatement rules, or shall he attempt to prove a products liability case? And, will he be obliged to negate the idea that he is seeking liability because of the contractor's deep pocket?

The evidence in the case at hand and the question to be decided is the same as the facts and law stated in the *Dow* case. We should follow it.

Inasmuch as the duty of supervision, inspection and control by a general building contractor is so commonly recognized, I also disagree with the majorities decision relative to the pleading question in this case.