Argued October 30, 1967, affirmed in part; reversed and remanded
in part February 14, petition for rehearing denied
March 26, 1968

## BLAKE, *Respondent, v.* ROY WEBSTER
## ORCHARDS ET AL, *Appellants.*

437 P. 2d 757

*Edwin J. Peterson,* Portland, argued the cause for appellant Roy Webster Orchards. With him on the briefs were Stanley E. Sharp and Tooze, Powers, Kerr, Tooze & Peterson, Portland.

*Gerald R. Pullen,* Portland, argued the cause for appellant Servis Equipment Company. With him on the brief were Hershiser, Mitchell & Smith, Portland.

*Raymond J. Conboy,* Portland, argued the cause for respondent. On the brief were Pozzi, Levin & Wilson, Philip A. Levin, Garry Kahn and Tyler Marshall, Portland.

Before PERRY, Chief Justice, and O'CONNELL, GOODWIN, DENECKE, HOLMAN and WOODRICH, Justices.

DENECKE, J.

This is a products liability case. The minor plaintiff was allegedly injured when a brush cutter threw a rock which hit plaintiff. The machine was manufactured by the defendant Servis Equipment Company

and used by the defendant Roy Webster Orchards at the time of the injury. It was rented to Webster by the defendant Weber Bros. The jury returned a verdict against the defendants Servis and Webster and they appeal.

The only allegation in plaintiff's complaint charging Servis is as follows:

> "At said time and place, defendant Servis Equipment Company was negligent in one or more of the following particulars: (a) In that adequate guards to prevent rocks or other hard objects from being thrown from said brush cutter were not included as part of the design of said machine."

The damage paragraph of the complaint commences:

> "As a proximate result of the negligence of the defendants, and each of them, in the foregoing respects, plaintiff was struck  *   *   *."

The plaintiff successfully contended at the trial that under the allegations of his complaint he was entitled to proceed upon the basis of strict liability as well as negligence. Plaintiff advanced his theory of strict liability by his argument to the jury, his interrogation of an expert witness, and by his requested instructions. For example, the plaintiff requested the following instruction, which the trial court gave:

> "You are instructed that a manufacturer who makes and sells brush cutting machinery which by reason of a defective design or inadequate guarding causes an extrahazardous condition for persons in the vicinity of its use is strictly liable to such persons for injury and damage caused by such defective design or such inadequate guarding."

The defendant Servis objected to all such conduct upon the ground that the plaintiff had not alleged a

cause of action in strict liability and assigned the trial court's rulings thereon as error.

Plaintiff contends upon appeal, as he did at trial, that his pleadings state a cause of action for strict liability as well as for negligence. He contends he has alleged a duty, a breach, and that damages were caused by the breach, and that is sufficient to state a cause of action for strict liability.

■ Our pleading and practice procedure is sometimes inadequate to sufficiently form the issues and inform the parties. This is partly true because of the lack of pretrial conferences in some cases and because of the necessity that the pleadings be given to the jury. Despite these shortcomings in our system, we conclude that in this case the complaint did not state a cause of action for strict liability and the trial court erred in permitting this theory to be advanced and submitted to the jury as a basis for recovery against Servis.

Previously, when a plaintiff in a products liability case thought it was feasible to attempt recovery upon the basis of both negligence and liability without fault, the practice was to state the cause of action in two counts,—one count sounded in negligence and the other in warranty. Then, in *Wights v. Staff Jennings,* 241 Or 301, 405 P2d 624 (1965), we decided:

"\* \* \* [A] common law action for personal injuries resulting from a defective product based upon an implied warranty of merchantability rests upon the theory of strict liability in tort. \* \* \*" 241 Or at 311.

■ What was formerly termed "warranty," a contract concept, is now more accurately termed "strict liability," a tort concept. However, this change in nomenclature and concept has not changed the rules of

pleading. If a plaintiff desires to allege two or more theories of recovery, it remains necessary to allege each, one in negligence and one in strict liability, if those are plaintiff's two theories.

An example of this is found in *Brown v. Gessler,* 191 Or 503, 230 P2d 541, 23 ALR2d 815 (1951). In that case the plaintiff claimed damages because of water escaping from an excavation dug by the defendants on their land. Plaintiff alleged that the defendants were negligent. Plaintiff also contended that the doctrine announced in *Rylands v. Fletcher,* 1 ERC 236, LR, 3 HL 330, applied. This doctrine imposes strict liability for the escapement of water impounded by defendants. To make this contention the plaintiff alleged in what was termed another and separate "cause of action" that defendants dug a hole, water collected in it and it escaped, to the damage of the plaintiff. No negligence was alleged in this part of the pleading.

In *Bedell v. Goulter,* 199 Or 344, 261 P2d 842 (1953), the plaintiff sought and secured recovery solely on the theory of strict liability. No mention of negligence or fault was made in the complaint. Plaintiff simply alleged that the defendants were blasting and the concussion and vibration therefrom damaged plaintiff's property.

■■ The question is at least inferentially raised,— how was Servis prejudiced by the trial court's action, or, to put it differently, what could Servis have done differently if it had been informed by proper pleadings that the plaintiff was going to rely upon the theory of strict liability, as well as the theory of negligence? This court cannot find that Servis was prejudiced in any particular manner; however, our system of trial practice is based upon the principle that the parties have the right to be informed by the pleadings of the

basis of the cause of action and, without any showing of specific prejudice, it is reversible error to submit the case on a basis that was not pleaded. *Tauscher v. Doernbecher Mfg. Co.*, 153 Or 152, 159-160, 56 P2d 318 (1936).

The trial court erred and the case must be remanded for a new trial in the action against Servis.

The other assignment of error asserted by both Servis and Webster concerns the mention of insurance by a witness.

The defendant Weber rented the brush cutter to the defendant Webster. Webster denied that the cutter caused the injury. Webster's attorney in his opening statement said that Webster rented the cutter on April 20 and returned it to Weber on April 23.

Plaintiff put Weber on the stand and the rental receipt was identified and received into evidence. It stated that the cutter went out on April 20, but was not returned until the twenty-sixth; however, only three days' rent was paid. Then the following occurred:

"Q [By plaintiff's attorney] Which indicates they kept it for some other reason other than using it for an extra three days?

"A That is correct.

"Q Do you know whether or not they were running tests with it with an engineer after the accident?

"A No I don't.

"Q By 'they' I mean Webster Orchards.

"A No, sir, I don't know.

"Q They didn't tell you why they wanted it the extra three days?

"A Wayne Webster called me on the 23rd and said that he—that the cutter had been involved in

an accident and that their insurance company wanted to keep it."

Defendant's motion for a mistrial was denied.

The plaintiff's attorney knew that Webster had insurance and that the insurer was promptly notified of the injury. There is a dispute among the parties on the issue, but we find no evidence that plaintiff's counsel previously knew that the insurance company tested the machine within a few days after the accident.

The trial court specifically stated that it did not believe plaintiff's counsel deliberately injected insurance into the case. There is ample evidence to support that conclusion in addition to plaintiff's counsel's previous lack of knowledge of the insurance company's testing. In view of defendant Webster's position that the machine did not cause the injury and Webster's counsel's statement to the jury that the machine had been received by Webster on April 20 and returned on April 23, what happened while the machine was in Webster's possession an additional three days was a subject for detailed inquiry.

■■ We have not always been precise in our statement of the rules covering the consequences of the introduction of insurance, but we have adhered to the following basic principles: If insurance is not relevant and is intentionally injected into the case, the trial court must grant a motion for mistrial and if it does not it has committed reversible error. *Leishman v. Taylor,* 199 Or 546, 263 P2d 605 (1953). If insurance is not relevant, but has come into the case through inadvertence, whether or not to grant a mistrial is in the discretion of the trial court. *Denton v. Arnstein,* 197 Or 28, 54-56, 250 P2d 407 (1952). This discretion is

largely uncontrolled by this court. We permit the trial court to decide whether or not prejudice has been created. *Wells v. Morrison,* 121 Or 604, 256 P 641 (1927).

■ It is true that if the injection of insurance is prejudicial, it is as prejudicial when it is inadvertently introduced as it is when it is intentionally introduced. However, the requirement of a mistrial in the event of an intentional injection of insurance is not only to avoid prejudice, but also to deter the practice of intentionally introducing irrelevant evidence. It is necessary for the expeditious and efficient trial of cases that the introduction of any type of irrelevant evidence be deterred. Usually a mistrial is not required merely because irrelevant evidence is intentionally introduced; however, when intentionally introduced evidence is not only irrelevant but also may cause prejudice, a mistrial is required. *Wiebe v. Seely,* 215 Or 331, 367-370, 335 P2d 379 (1959).

In the event of an inadvertent introduction of irrelevant evidence, the granting of a mistrial cannot act as a deterrent except in a possibly limited way by causing counsel to be more careful in their interrogation at trial or in their pretrial advice to their witnesses

In addition to this reason for distinguishing between the unintentional and the intentional introduction of insurance, there is probably another, although usually unstated, reason, which is that there is doubt whether or not a defendant is really prejudiced if a jury learns that the defendant has insurance. *Johnson v. Hansen,* 237 Or 1, 16-18, 389 P2d 330, 390 P2d 611 (1964). There is a belief that many jurors assume that the defendants in most tort cases are covered by insurance. Almost all jurors carry automobile insurance

and many jurors carry general liability insurance. The desirability and prevalence of having insurance to protect against many forms of liability is widely advertised by the insurance industry.

Because the prejudicial effect of the introduction of evidence that the defendant is insured is doubtful, the heavy penalty of a mandatory mistrial when insurance is unintentionally injected is not deemed necessary.

■ The defendant Webster contends that the trial court did not believe it had any discretion because it concluded that insurance came in inadvertently. Plaintiff's counsel argued to the trial court that the decision was one for the trial court's discretion and we cannot say from the record that the trial court did not exercise its discretion.

The judgment against Roy Webster Orchards is affirmed. The judgment against Servis Equipment Company is set aside and the cause is remanded.