GARDYJAN, *Respondent, v.* TATONE ET UX, *Appellants.*

528 P2d 1332

*Harold A. Fabre,* of Fabre & Ehlers, Pendleton, argued the cause and filed a brief for appellants.

*Monte E. Walter,* of Duncan & Walter, Portland, argued the cause and filed a brief for respondent.

Before O'CONNELL, Chief Justice, and HOLMAN, TONGUE, HOWELL, BRYSON, and SLOPER, Justices.

HOWELL, J.

This is an action for personal injuries which plaintiff alleges were incurred as a result of eating unwholesome food at defendants' restaurant. Defendants appeal from a judgment entered on a jury verdict in favor of plaintiff.

Plaintiff is a truck driver who was hauling heavy equipment from South Carolina to Seattle. On April 7, 1972, at approximately 8:30 a.m. plaintiff and his co-driver stopped for breakfast at defendants' restaurant in Boardman. Their last previous stop had been in Wyoming the night before where plaintiff had a chicken salad sandwich and a glass of milk. At defendants' restaurant plaintiff ordered a ham omelet, hash brown potatoes, and a glass of orange juice. Plaintiff noted that the omelet had a rancid taste and a slight odor, and he ate only half the omelet and potatoes. About halfway between Boardman and Portland plaintiff became ill. His illness increased to such a degree that when he reached Tacoma he was admitted to a hospital.

Plaintiff's complaint was predicated on negligence, and he alleged:

"That the meal served to plaintiff was unwholesome and unfit for human consumption said food containing staphylococcal germs. Plaintiff further alleges that his illness and other injuries and damages were the direct and proximate result of the defendants' negligence in serving to plaintiff food which defendants knew or in the exercise of reasonable care should have known was not wholesome or fit for human consumption."

Defendants contend that the trial court erred in instructing the jury on breach of warranty:

"Now, when food is sold for human consumption the law implies a warranty by the seller to the purchaser that the food is reasonably fit therefore. This warranty need not be expressed in any fashion, as it is implied by law from the mere fact of the sale of food intended for human consumption. Now, if food sold is not reasonably fit for human consumption, then there is a breach of warranty and defendant may be held liable for the damages proximately resulting from such breach.

"Now, in the case of sale of food by a restaurant it is not necessary to prove negligence on the part of the restauranteur but if the food is not fit for consumption it is sufficient to show merely that the restauranteur ought to have known of the bad condition of the food and was negligent in furnishing it."

■ The plaintiff brought his case in negligence. He could have alleged a breach of the implied warranty of merchantability, ORS 72.3140 (UCC § 2-314), or strict liability in tort. Indeed, the first draft of § 402A of the Restatement of Torts (Second) was limited to food and drink. *See* Prosser on Torts 657, n. 51, § 98 (4th ed 1971). However, to come within these liberal theories of strict liability the plaintiff must allege them

in his complaint and give the defendants notice of his cause of action. This he failed to do. Thus, it was error for the trial court to instruct the jury on the basis of implied warranty of fitness of the food for human consumption.

In *Blake v. Webster Orchards,* 249 Or 348, 437 P2d 757 (1968), the plaintiff alleged a cause of action in negligence but proceeded to try the case in part on the theory of strict liability. The trial court instructed the jury on strict liability. This court held that "[i]f a plaintiff desires to allege two or more theories of recovery, it remains necessary to allege each, one in negligence and one in strict liability, if those are plaintiff's two theories." 249 Or at 352.

In *Blake,* as in the instant case, plaintiff contended that the defendant was not prejudiced by plaintiff's failure to allege alternative theories. The court said:

"* * * This court cannot find that [the defendant] was prejudiced in any particular manner; however, our system of trial practice is based upon the principle that the parties have the right to be informed by the pleadings of the basis of the cause of action and, without any showing of specific prejudice, it is reversible error to submit the case on a basis that was not pleaded. * * *" 249 Or at 352-53.

A more difficult question is whether the plaintiff produced sufficient evidence of defendants' negligence to justify the submission of the case to the jury. There was evidence that the plaintiff ate nothing at all from the time he had the chicken salad sandwich in Wyoming at 9 o'clock the previous evening until he had breakfast at defendants' restaurant. There was also evidence that the omelet had a rancid taste and a

slight odor. Plaintiff began to suffer stomach cramps approximately one and one-half hours after eating breakfast. His illness increased in severity, and when he arrived in Portland he was suffering severe vomiting, diarrhea, stomach and chest cramps, and blurred vision. Plaintiff's condition became such that he and his co-driver were forced to stop at a motel in Tacoma. Later the motel operator took plaintiff to the hospital.

Dr. Fox treated the plaintiff at the hospital. He diagnosed plaintiff's malady as acute staphylococcal gastroenteritis, which diagnosis, as defendants argue, was Dr. Fox's "impression." However, the doctor also testified as follows:

"Q Thereafter did anything occur either medically or physically to alter your diagnosis.

"A After the initial diagnosis of gastroenteritis in this patient, his symptoms subsided to such an extent that the diagnosis was not changed and he was discharged from the hospital.

"Q What was your final diagnosis.

"A As I remember it the final diagnosis was staphylococcal enteritis.

"* * * * *

"Q To what do you ascribe the cause of the illness.

"A If in fact this was a case of staphylococcal enteritis it must have been due to the ingestion of some food containing the staphylococcal enterotoxins. I am not certain that the meal in question would have been the offending episode but the timing on it seemed to be fairly appropriate. We did not have access to the food to ascertain the presence or absence of staphylococci."

No tests were conducted on the food in question to determine if it was, in fact, tainted, and the

plaintiff offered no evidence of other complaints concerning the food served in defendants' restaurant.

We feel that there was sufficient evidence of unwholesomeness of the food to submit the case to the jury. As the District of Columbia Municipal Court of Appeals has stated:

> "* * * [W]e have recognized that a plaintiff may lay the foundation for a jury inference of unwholesomeness by circumstantial evidence. *Such evidence may consist of* proof that other persons who ate the same food were also stricken, or of *expert medical opinion that plaintiff's illness was food poisoning and that the foods eaten, if tainted, could have been the competent producing cause of the illness."* *Benjamin v. Hot Shoppes, Inc.,* 185 A2d 512, 514 (DC Mun App 1962). (Emphasis added, footnote omitted.)

*Accord, Lohse v. Coffe,* 32 A2d 258 (DC Mun App 1943); *Sneed v. Beaverson,* 395 P2d 414 (Okla 1964); cf. *Carter Farms Company v. Hoffman Laroche, Inc.,* 83 NM 383, 492 P2d 1000 (1971). *And see* cases listed in Annot., 130 ALR 616, 617 (1940). *But see John Morrell & Company v. Shultz,* 208 So 2d 906 (Miss 1968); *Geisness v. Scow Bay Packing Co.,* 16 Wash 2d 1, 132 P2d 740 (1942); *Walton v. Guthrie,* 50 Tenn App 383, 362 SW2d 41 (1962); *Hebert v. Loveless,* 474 SW2d 732 (Tex Civ App 1971).

■ The defendants also contend that a likely cause of the food poisoning was the chicken salad sandwich that plaintiff ate in Wyoming. The fact that there was another possible cause of the plaintiff's illness is not fatal to his case. He need only prove that the defendants' food was the more likely cause:

> "The plaintiff was not required to make out a perfect unassailable case in order to get to the

jury. She was not bound to exclude every other possible cause for her illness; *she had only to produce evidence making it more likely that her illness was caused by unwholesome food served by defendant than by a cause for which defendant would not be responsible.* That more than one inference was available as to the cause of the illness would not subject her to a directed verdict so long as a jury could find it was more probable than not that defendant's food was contaminated." *Benjamin v. Hot Shoppes, Inc.,* supra at 515. (Emphasis added.)

With regard to the breach of the defendants' duty of due care to see that the food served was wholesome, the plaintiff did testify that the food tasted rancid and had a slight odor. Thus, there was some evidence from which the jury could infer that there was some outward manifestation of unwholesomeness which one of defendants' employees, exercising reasonable care, should have noticed.

We conclude that plaintiff adduced sufficient evidence to present a jury question on the issue of defendants' negligence, and the trial court properly overruled defendants' motion for a directed verdict. However, because of the erroneous instruction, the cause must be reversed.

Reversed and remanded.