Argued and submitted September 5, 1984, reassigned July 3, reassigned September 17, reversed and remanded October 15, 1985

HUMBERT,
*Petitioner on Review,*

*v.*

SELLARS et al,
*Respondents on Review.*

(CA A27258; SC S30581)

708 P2d 344

Wesley S. Johnson, John Day, argued the cause and filed briefs for petitioner on review.

J. C. Van Voorhees, of Minturn, Van Voorhees, Larson & Dixon, Prineville, argued the cause and filed the brief for respondents on review.

PETERSON, C. J.

Carson, J., filed a concurring opinion.

Lent, J., filed a specially concurring opinion.

Campbell, J., filed a dissenting opinion.

**PETERSON, C. J.**

Plaintiff slipped and fell on a wet patio while visiting a friend's apartment. She sought damages for injuries from the owners and manager of the apartment complex. Defendants moved for summary judgment. The trial court granted the motion. The Court of Appeals affirmed. *Humbert v. Sellars,* 67 Or App 176, 180, 677 P2d 760, 762 (1984). For the reasons that follow, we reverse the Court of Appeals and remand the case to the circuit court for further proceedings.

In the trial court defendants stated that they relied on the common-law principle that "a landlord is not subject to liability to a tenant or a tenant's invitees or guests for injury incurred on the premises caused by dangerous conditions which existed when the tenant took possession of the rented premises."[1] The plaintiff asserted in response that even if she could not recover under the common law, she was entitled to recover under the Residential Landlord and Tenant Act, ORS 91.700 to 91.895, specifically ORS 91.770(1)(h), which provides that "a dwelling unit shall be considered unhabitable if it substantially lacks: (h) Floors * * * maintained in good repair." The trial court rejected plaintiff's contentions, stating:

"I rule that the Landlord-Tenant Law is not applicable to this situation, because it was not the intent of the legislature to make it so. The Landlord-Tenant Law was intended to impose a duty upon the landlord that was concurrent with the duty of the tenant to pay rent. The landlord's duty was to maintain the premises in a habitable condition, the measure of the damages being the difference between the fair market value of the premises as they had been rented and the value of the premises during the period of breach as they actually existed. That quotation comes from the case of *Lane v. Kelley,* 57 Or App 197, 1982 Court of Appeals case. I can find no authority when there is no evidence of any intent on the part of the legislature to extend the requirements of this act to a guest of a tenant who is injured on the premises, thereby modifying common law in this matter.

"Because plaintiff has not made out a case under any of the exceptions of the Restatement and because there has been

---

[1] Defendants cited *Jensen v. Meyers,* 250 Or 360, 441 P2d 604 (1968), *Macomber v. Cox,* 249 Or 61, 435 P2d 215 (1968); *Staples v. Senders,* 164 Or 244, 96 P2d 215, 101 P2d 232 (1940), and Restatement (Second) Torts, section 356 (1965).

*no other demonstration of a duty imposed upon the landlord under the facts of this case, [the defendants are] entitled to summary judgment. * * *"*

The Court of Appeals affirmed the trial court. Concerning the common-law rule, the Court of Appeals held that "with certain [inapplicable] exceptions, a lessor of land is not liable to his lessee or others on the land for harm caused by any dangerous condition which existed when the lessee took possession." 67 Or App at 179, 677 P2d at 761. Considering ORS 91.770(1), the court stated:

"Plaintiff fails to point out or allege in her complaint which subsection of ORS 91.770 she contends was violated by the water accumulation on the patio. Although we agree that a landlord's duty to a guest is the same as that owed to a tenant, *Lyons v. Lich,* 145 Or 606, 612, 28 P2d 872 (1934), we do not agree that the water on the patio falls within the statutory guidelines defining which defects amount to unhabitable premises. Plaintiff's basic argument that a guest might state a claim under ORS 91.770 may not be entirely untenable. *See Brewer v. Erwin,* 287 Or 435, 452, 600 P2d 398 (1979). However, without an additional assertion that defendants failed to provide one of the specifically-enumerated services mandated by ORS 91.770, the argument is irrelevant. We therefore reject plaintiff's argument that the trial court erroneously dismissed her complaint because ORS 91.770 impliedly permits her to state a claim for defendants' breach of their duty to maintain the tenant's premises in a habitable condition." 67 Or App at 180, 677 P2d at 762.

## I

Defendants' motion for summary judgment was based on evidence contained in depositions of plaintiff and of defendant Taylor, who managed the property for the owners, Mr. and Mrs. Sellars. According to the evidence, the property was an apartment complex operated for low income elderly tenants under standards set by the State Housing Authority and the federal Department of Housing and Urban Development. Plaintiff occupied one of the other apartments in the complex.

On the day she was injured, the plaintiff visited her neighbor in the adjoining apartment. In front of the neighbor's apartment was a patio, enclosed by a fence. The evidence suggests that the patio was within the premises leased to the

neighbor. It had been raining, and there was standing water on the patio in front of the entry to the neighbor's apartment. The water was as deep as plaintiff's oxford shoes, reaching up to a cement step in front of the door. She successfully entered the apartment, but on the return trip she slipped in the water and fell, causing her injuries. Some kind of board had been placed on the patio for the purpose of stepping above standing water, but it was some distance away from the cement step and plaintiff did not recall stepping on it.

An affidavit executed by the host neighbor stated that she had had a water problem on the patio since 1978, some three years before the incident. Defendant Taylor, who managed the apartments for the other defendants, testified that he began managing the property in February, 1980, and that the previous property manager told him of the problem. The accident happened in July, 1981.

## II

In her petition for review, the plaintiff urges that we should "abolish the immunity afforded to landlords and * * * apply general negligence principles to the relationship between landlords and tenants."[2] We need not reach that question because we hold that there is evidence showing a violation of ORS 91.770, and defendant therefore was not entitled to summary judgment. ORCP 47C.

Minimum standards of safety and fitness for human habitation have not been left to private ordering and the inventiveness of common-law courts; they have long been imposed by state and local lawmakers. A landlord's duties under housing codes and the more recent landlord-tenant acts generally are enforceable by public officials or by special civil remedies accorded the tenant. Love, *Landlord's Liability for Defective Premises: Caveat Lessee, Negligence, or Strict Liability?* 1975 Wis L Rev 19, 42-48. Some acts spell out the

---

[2] She cites *Young v. Garwicki,* 380 Mass 162, 402 NE2d 1045 (1980), *Pagelsdorf v. Safeco Ins. Co. of America,* 91 Wis 2d 734, 284 NW2d 55 (1979), *Sargent v. Ross,* 113 NH 388, 308 A2d 528 (1973), and *Presson v. Mountain States Properties, Inc.,* 18 Ariz App 176, 501 P2d 17 (1972).

consequences if a landlord's noncompliance results in personal injuries,[3] but many do not. Courts nevertheless have held landlords liable for injuries caused by breaches of such statutory duties as in the case of other safety laws. The point was first made by Cardozo, J., in *Altz v. Leiberson,* 233 NY 16, 134 NE 703 (1922), when a tenant was injured in her room by a falling ceiling, which the landlord failed to repair after notice:

> "At common law there was no duty resting on the landlord of an apartment house to repair the rooms demised. His duty of repair was limited to those parts of the building which the occupants enjoyed in common. The Tenement House Law has changed the measure of his burden.
>
> [The law provided: 'Every tenement house and all the parts thereof shall be kept in good repair.']
>
> The command of the statute, directed, as it plainly is, against the owner * * * has thus changed the ancient rule. * * * The meaning is that the premises shall not be suffered to fall into decay. The duty to prevent this, which, in part at least, once rested upon the tenant, is now cast upon another.
>
> "A narrower construction ignores, not only the letter of the statute, but the evil to be cured. * * * We may be sure that the framers of this statute, when regulating tenement life, had uppermost in thought the care of those who are unable to care for themselves. The legislature must have known that unless repairs in the rooms of the poor were made by the landlord, they would not be made by any one. The duty imposed became commensurate with the need. The right to seek redress is not limited to the city or its officers. The right extends to all whom there was a purpose to protect."

*Altz v. Leiberson, supra,* 233 NY at 17-19, 134 NE at 703-04 (citations omitted). Tort liability for violations of housing laws has been implied in California, Kentucky, Michigan, New Jersey, New Mexico, and Ohio.[4]

## Oregon's Residential Landlord and Tenant Act

---

[3] Professor Browder lists different state provisions dealing with tort liability for breach of the landlord's duties. *See* Browder, *The Taming of a Duty—The Tort Liability of Landlords,* 81 Mich L Rev 99, 115-16 (1982).

[4] *McNally v. Ward,* 192 Cal App 2d 871, 14 Cal Rptr 260 (1961); *Rietze v. Williams,* 458 SW2d 613 (Ky 1970); *Morningstar v. Strich,* 326 Mich 541, 40 NW2d 719 (1950); *Daniels v. Brunton,* 9 NJ Super 294, 76 A2d 73 (1950), *aff'd* 7 NJ 102, 80 A2d 547 (1951); *McLain v. Haley,* 53 NM 327, 207 P2d 1013 (1949); *Dostev v. Murr,* 57 Ohio App 157, 12 NE2d 781 (1937).

extends the landlord's liability to others besides the tenant. ORS 91.725 states that the remedies provided in the act "shall be so administered that an aggrieved party may recover appropriate damages." In *Brewer v. Erwin*, 287 Or 435, 441, 600 P2d 398, 403 (1979), we quoted the comment to the corresponding section of the Uniform Residential Landlord and Tenant Act, 7A Uniform Laws Annotated section 1.105(a): "The use of the words 'aggrieved party' is intended to indicate that in appropriate circumstances rights and remedies may extend to third persons under this Act or supplementary principles of law * * *."

■ ■    An aggrieved party includes a tenant's guest who is injured by a landlord's failure to maintain the premises in a habitable condition, if the tenant herself could recover damages for the same injury. The measure of a "habitable condition" may be what is habitable by those who reside in the premises, but when the measure is breached, ORS 91.725 recognizes that others may suffer the consequences. The plaintiff therefore has a cause of action if she is injured because of the defendants' breach of the act.

### III

The drafters of ORS 91.770 aimed to establish minimum standards of health, safety, comfort and convenience that rental units must meet in order to be "habitable."

ORS 91.770 provides:

"(1)   A landlord shall at all times during the tenancy maintain the dwelling unit in a habitable condition. For purposes of this section, a dwelling unit shall be considered unhabitable if it substantially lacks:

"* * * * *.

"(h)   Floors, walls, ceilings, stairways and railings maintained in good repair;

"* * * * *."

■    "Floors" is not specifically defined in ORS chapter 91. While one definition of "floor" might include only the part of a room upon which one stands, we believe that the legislature likely intended the term to include all floors in the dwelling unit, including an enclosed patio within the tenant's exclusive control. Other subsections of ORS 91.770(1) refer to areas or things such as "roof and exterior walls" (section

(1)(a)), and "[b]uilding, grounds and appurtenances" (section (1)(e)).[5]

---

[5] In its entirety, ORS 91.770(1) provides:

"(1)     A landlord shall at all times during the tenancy maintain the dwelling unit in a habitable condition. For purposes of this section, a dwelling unit shall be considered unhabitable if it substantially lacks:

"(a)     Effective waterproofing and weather protection of roof and exterior walls, including windows and doors;

"(b)     Plumbing facilities which conform to applicable law in effect at the time of installation, and maintained in good working order;

"(c)     A water supply approved under applicable law, which is:

"(A)     Under the control of the tenant or landlord and is capable of producing hot and cold running water;

"(B)     Furnished to appropriate fixtures; and

"(C)     Connected to a sewage disposal system approved under applicable law and maintained in good working order to the extent that the system can be controlled by the landlord;

"(d)     Adequate heating facilities which conform to applicable law at the time of installation and maintained in good working order;

"(e)     Electrical lighting with wiring and electrical equipment which conform to applicable law at the time of installation and maintained in good working order;

"(f)     Building, grounds and appurtenances at the time of the commencement of the rental agreement in every part clean, sanitary and free from all accumulations of debris, filth, rubbish, garbage, rodents and vermin, and all areas under control of the landlord kept in every part clean, sanitary and free from all accumulations of debris, filth, rubbish, garbage, rodents and vermin;

"(g)     An adequate number of appropriate receptacles for garbage and rubbish in clean condition and good repair at the time of the commencement of the lease or rental agreement, and the landlord shall provide and maintain appropriate serviceable receptacles thereafter and arrange for their removal unless the parties by written agreement provide otherwise;

"(h)     Floors, walls, ceilings, stairways and railings maintained in good repair;

"(i)     Ventilating, air conditioning and other facilities and appliances, including elevators, maintained in good repair if supplied or required to be supplied by the landlord;

"(j)     Safety from the hazards of fire; or

"(k)     Working locks for all dwelling entrance doors, and, unless contrary to applicable law, latches for all windows, by which access may be had to that portion of the premises which the tenant is entitled under the rental agreement to occupy to the exclusion of others and keys for such locks which require keys.

"(2)     The landlord and tenant may agree in writing that the tenant is to perform specified repairs, maintenance tasks and minor remodeling only if:

"(a)     The agreement of the parties is entered into in good faith and not for

■    The specific inclusion, in ORS 91.770(1)(f) of the words "[b]uilding, grounds and appurtenances at the time of the commencement of the rental agreement in every part clean, sanitary and free from all accumulations of debris, filth, rubbish, garbage, rodents and vermin" suggest that the term "dwelling unit" would include a patio floor such as is involved in this case.[6] Section (1)(h) requires "[f]loors, walls, ceilings, stairways and railings [to be] maintained in good repair." There is no suggestion that floors, stairs and railings include only interior floors, stairs and railings. We hold that the surface upon which the plaintiff was walking was a "floor" within the definition of ORS 91.770(1)(h), and that the trial court erred in granting the defendants' motion for summary judgment.[7]

---

the purpose of evading the obligations of the landlord;

"(b)    The agreement does not diminish the obligations of the landlord to other tenants in the premises; and

"(c)    The terms and conditions of the agreement are clearly and fairly disclosed and adequate consideration for the agreement is specifically stated."

[6] ORS 91.705(3):

" 'Dwelling unit' means a structure or the part of a structure that is used as a home, residence or sleeping place by one person who maintains a household or by two or more persons who maintain a common household. 'Dwelling unit' regarding a person who rents a space for a mobile home, as defined in ORS 91.873, or who rents moorage space for a floating home, as defined in ORS 488.705, but does not rent the home, means the space rented and not the mobile or floating home itself."

[7] The dissent accuses us of using an "end run" to reach this question. The plaintiff has relied on the Residential Landlord and Tenant Act at every stage of this case. Plaintiff's amended complaint alleged that her injuries were due to defendants' "negligence" in failing to provide proper drainage, in failing to build up the walkway outside the front door, in failing to provide a nonslip surface on the walkway, in failing to take other measures to prevent water from collecting and to secure tenants and their visitors against slipping in front of the entrance.

The Restatement (Second) Torts § 285 (1965), uses the word "negligence" to refer to conduct that falls below statutory as well as common-law standards of responsibility. A complaint need only allege facts bringing the case within the terms of the statute. We recently drew attention to the distinction between regulatory laws as sources of standards for negligence and as sources of liability independent of negligence. *Shahtout v. Emco Garbage Company, Inc.*, 298 Or 598, 695 P2d 897 (1985).

Defendants do not claim to have been misled or otherwise affected by the reference to "negligence" or the lack of reference to ORS 91.770 in plaintiff's complaint. The relationship of the statute to a landlord's liability for physical injuries to tenants or their visitors was presented and debated before the circuit court and the Court of Appeals. Under the law as set forth in this opinion there was no basis to dismiss the complaint or to grant summary judgment to defendants. *See* ORCP 12 and ORCP 18.

The Court of Appeals is reversed. Remanded to the trial court.

**CARSON, J.,** concurring.

Were this court writing on the proverbial clean slate, I would agree with the trial judge that the Residential Landlord and Tenant Act (ORS 91.700 to 91.900) does not apply to the facts of this case. However, the slate is not clean. In the case of *Brewer v. Erwin,* 287 Or 435, 447, 600 P2d 398 (1979), this court concluded that the legislature extended a landlord's liability for "actual damages" to a tenant beyond what was termed the "narrow economic measure of tenant's loss defined in ORS 91.805." As noted by the majority in this case (although not necessary to benefit the tenant-plaintiff in that case), *Brewer* extended the provided remedies to "an aggrieved party," which would include others than the tenant. *Brewer v. Erwin, supra,* 287 Or at 441.

If this court in *Brewer* in 1979 extended the Act beyond the confines envisioned by the legislature when it enacted the Act in 1973, which I believe we did, three legislative sessions since our decision in *Brewer* have convened and adjourned without changing the relevant statutory language.[1] One necessarily must assume now that the legislature does not view the decision of this court in *Brewer* to be contrary to its earlier legislative work, or at least, I so assume. Given that premise, it is not appropriate for me now to argue to the contrary.

The majority's extension of *Brewer* to the facts of this case is a logical and consistent application of this court's opinion in *Brewer.* I therefore concur.

**LENT, J.,** specially concurring.

As must be apparent from the title page, the court has wrestled long and hard with this case. The majority now holds that on the defendant's motion for summary judgment the plaintiff should have prevailed. The majority reaches that result by expressly holding as a matter of law that the surface

---

[1] As noted in *Brewer:*

"If the interpretation we have given the act departs from the intended policy, or if that policy is revised in the light of experience, its provisions can be amended accordingly." *Brewer v. Erwin,* 287 Or 435, 454, 600 P2d 398 (1979).

of the patio just outside the door of the tenant's apartment was a "floor" within the meaning of ORS 91.770(1)(h). That is not enough to get the plaintiff home, however, for the plaintiff had also to show that the floor was not "maintained in good repair."

Throughout these proceedings plaintiff's position has been that a "structural" change was necessary to alleviate the dangerous condition that existed when the tenancy commenced.[1] There was no evidence that the patio surface was not in good repair or that it failed in the function of a floor to bear weight. Had it not been for water temporarily standing on the patio surface, plaintiff would have no arguable claim. Defendant Taylor testified on deposition that the condition was remedied by putting in

> "probably a 10 × 12 wood deck and they're supported on like with 2 × 4 footings and joists."

I do not agree that a structural change of that kind is what the legislative text of ORS 91.770(1)(h) reaches by "maintain[ing] in good repair" a floor. For that reason I cannot join the opinion.[2]

Plaintiff urged throughout that she was entitled to recover on a common law negligence theory and that we should abandon the general rule of the common law that a lessor of land is not liable to the lessee or others lawfully on the land for physical harm caused by a dangerous condition which existed when the lessee took possession. That rule is stated in Restatement (Second) of Torts § 356. I understood that resolution of that contention was the reason we allowed review.

I believe that we should reach the issue. I shall not extend this opinion by the many pages necessary to develop the reasons, historical and logical, that I believe that the rule should never have been applied to "others on the land" such as

---

[1] By "dangerous condition" I take the plaintiff to have meant (and I do mean) a condition that subjected those on the premises to an unreasonable risk of harm.

[2] It would appear that under the majority's opinion and the conceded fact of the defendants' awareness of the problem of the standing water, that plaintiff will be entitled to prevail on the issue of defendants' "fault" if she can convince the finder of fact that she did indeed sustain injury by reason of the standing water, irrespective of the condition of repair of the patio surface, *i.e.,* the "floor."

this plaintiff and certainly should not now apply. The lessor who creates a dangerous condition should not by reason of his contractual or property arrangements with the lessee be able to avoid liability to a third person who suffers physical injury by reason of that condition. Indeed, the lessor under the common law is liable for injury resulting from such a condition to one outside the premises. *See,* for example, Restatement (Second) of Torts § 379.[3] *See also* 2 Harper and James, The Law of Torts 1509-10, § 27.16.[4] There is no logical reason why the guest of a tenant who is injured by the dangerous condition can recover if the injury takes place as the guest approaches the property but cannot recover if injured when he sets foot on the property.

The issue was raised and argued, but I leave to another case that may not be held to come within the Residential Landlord and Tenant Act the publication of my views.[5]

Because I believe this plaintiff, as a visitor, has pleaded and presented evidence sufficient to raise a material issue of fact for recovery other than under the Residential Landlord and Tenant Act, I concur in the result.

---

[3] Restatement (Second) of Torts § 379 states:

"A lessor of land who transfers its possession in a condition which he realizes or should realize will involve unreasonable risk of physical harm to others outside of the land, is subject to the same liability for physical harm subsequently caused to them by the condition as though he had remained in possession."

[4] 2 Harper and James, The Law of Torts 1509-10, § 27.16 states:

"Yet it is no part of the general law of negligence to exonerate a defendant simply because the condition attributable to his negligence has passed beyond his control before it causes injury (if the injury was foreseeable at the time defendant still had control)." (Footnote omitted.)

[5] I do not fully understand whether the majority is holding that violation of ORS 91.770(1)(h) establishes strict liability. What is meant by "maintained" in good repair? Is that a continuing, absolute, nondelegable duty that is breached the instant that the floor falls into disrepair? Must the landlord be aware of the state of disrepair and have an opportunity to repair? If the landlord must know, or in the exercise of reasonable care know, of the state of disrepair and fail to take ordinary care to make repairs, are we not back to just negligence? In another field of law, the owner of a ship is held to a warranty of seaworthiness that runs to the crew. The owner has an absolute, nondelegable duty to the crew to furnish a seaworthy vessel, *i.e.,* in general terms, a vessel reasonably safe for them to perform their duties as members of the crew. Is the landlord's statutory duty of that nature? As just one question that arises from the majority's holding, I ask if the landlord, under the statute, is liable to a visitor of the tenant where the visitor is injured by tripping over a break in the flooring caused by the visitor and the tenant moving some heavy object such as a safe across the floor?

**CAMPBELL, J.,** dissenting.

At one time this case was assigned to me. It has now been reassigned. I trust that the reassignment is "without recourse", because I disagree with the majority and, therefore, dissent.

The plaintiff in her amended complaint alleged *only* that she fell and suffered personal injuries "due to the negligence of the defendants" in one or more of the following particulars:

"(1)  In failing to provide proper drainage for water which tended to collect outside said neighbor's front door;

"(2)  In failing to build up the walkway outside said front door so as to keep the walkway out of a pool of water;

"(3)  In failing to provide a nonslip surface on the walkway outside said door;

"(4)  In otherwise failing to take measures to prevent water from collecting outside of said door and taking measures to insure that tenants and their visitors would not slip thereon."

I fail to understand how the plaintiff can bootstrap a common-law negligence action into a strict liability action under the Residential Landlord and Tenant Act.[1]

It is my understanding that we allowed review in this case primarily to evaluate the plaintiff's contention that the rule set out in Restatement of Torts (Second) § 356 should not be applied to the letting of a residential apartment. Now, by the use of an end run, the majority has decided the motion for summary judgment should have been denied on the narrow basis that the patio was a "floor" within the meaning of ORS 91.770(1)(h).

It is my opinion that we should not have allowed

---

[1]The majority answers this question by saying that the parties argued the application of the Residential Landlord and Tenant Act to this case on the motion for summary judgment and the trial judge ruled the act did not apply. The majority apparently reasons that because the defendants entered into the argument and did not make an objection that the act was outside the scope of the pleadings, the objection has been waived. The rebuttal is that the defendants won the motion for summary judgment in the trial court and there is no rule of law that requires a party to state additional grounds as to why it should prevail. The defendants made their position clear in their brief in the Court of Appeals when they said: "The plaintiff based her case upon a theory of negligence not upon a breach of implied warranty."

review in this case. I don't think that we should try to decide this case on the above described narrow issues without reexamining the law of Oregon generally concerning the liability of a landlord to the guest of a tenant for personal injuries caused by a dangerous condition on the leased premises. This wider issue has ramifications which were not argued or briefed. For that reason this is not a proper case to make a general reexamination of the Oregon law in this area.

As a starting point it is important to consider what remedies might have been available to the plaintiff. Those potential remedies included causes of action based upon: (1) One of the exceptions to Restatement (Second) of Torts § 356, (2) The Residential Landlord and Tenant Act, (3) An implied warranty of habitability separate and apart from any statute, or (4) Restatement (Second) of Property § 17.6.

## RESTATEMENT (SECOND) OF TORTS

This court in *Richards v. Dahl,* 289 Or 747, 749, 618 P2d 418 (1980), said "We have previously stated that the principles announced in the Restatement of Torts (Second) reflect our views of the law governing the liability of a landlord to a tenant." *See* also *Lapp v. Rogers,* 265 Or 586, 588, 510 P2d 551 (1973); *Jensen v. Meyers,* 250 Or 360, 441 P2d 604 (1968).

The relevant section of Restatement (Second) of Torts is:

§356 Conditions Existing When Lessor Transfers Possession: General Rule

"Except as stated in §§ 357-362, a lessor of land is not liable to his lessee or to others on the land for physical harm caused by any dangerous condition, whether natural or artificial, which existed when the lessee took possession."[2]

The relevant sections which are listed as exceptions to section 356 are listed by number and title as follows:

§357 Where Lessor Contracts to Repair

§358 Undisclosed Dangerous Conditions Known to Lessor

---

[2]Restatement (Second) of Torts § 356 is substantially the same as the corresponding section in Restatment of Torts. The Restatement of Torts was adopted and promulgated by the American Law Institute on May 11, 1934. The first reference that I can find to it in connection with a landlord-tenant question in Oregon is in *Goodman v. Fernald,* 154 Or 654, 662, 61 P2d 1253 (1936).

§359   Land leased for Purpose Involving Admission of Public

§360   Parts of Land Retained in Lessor's Control Which Lessee is Entitled to Use

§361   Parts of Land Retained in Lessor's Control but Necessary to Safe Use of Part Leased

§362   Negligent Repairs by Lessor

The plaintiff, at the argument on the motion for summary judgment in the trial court, admitted that she did not come within any of the six exceptions to section 356. Therefore, the plaintiff has argued that we should scuttle section 356 and adopt a new rule stating that a landlord owes the guest of a tenant a duty to exercise reasonable care. The plaintiff contends that section 356 has deep historical roots dating back to the 16th century in England and the doctrine of *caveat lessee.*

## THE RESIDENTIAL LANDLORD AND TENANT ACT

In 1973 the Oregon Legislature passed the Residential Landlord and Tenant Act. (ORS 91.700 to 91.895). The plaintiff claims that the following provisions relating to habitable conditions are relevant to her position:

"ORS 91.770(1) A landlord shall at all times during the tenancy maintain the dwelling unit in a habitable condition. For purposes of this section, a dwelling unit shall be considered unhabitable if it substantially lacks:

"* * * * *

"(f)   Building, grounds and appurtenances at the time of the commencement of the rental agreement in every part clean, sanitary and free from all accumulations of debris, filth, rubbish, garbage, rodents and vermin, * * *.

"* * * * *

"(h)   Floors, walls, ceilings, stairways and railings maintained in good repair."

The plaintiff claims that the defendants, by allowing the water from the rain to collect in front of the tenant's door, breached the general statutory obligation of ORS 91.770(1) to "maintain the dwelling in a habitable condition" and the specific statutory obligations as set out in ORS 91.770(1)(f) and (h). She argues that subdivision (f) has been violated because the rain water was "debris." She claims that the patio deck was a "floor" within the meaning of subdivision (h). The

plaintiff has characterized these as breaches of "warranties of habitability."

The plaintiff also claims that the defendants' alleged violations of the specific provisions of ORS 91.770 give her an alternative remedy to recover under the doctrine of "negligence per se."[3]

The literal language of The Residential Landlord and Tenant Act does not provide for the recovery of personal injuries by a tenant or the guest of a tenant. ORS 91.800(2) provides that a tenant may recover damages for "any noncompliance by the landlord" with ORS 91.770. To complete the statutory scheme, ORS 91.725 provides that the remedies under the Residential Landlord and Tenant Act "shall be so administered that an aggrieved party may recover appropriate damages."

*Brewer v. Erwin,* 287 Or 435, 452, 600 P2d 398 (1979), interpreted the Residential Landlord and Tenant Act to allow recovery for personal injuries:

> "ORS 91.770(1) * * *, declares that a rental dwelling that lacks any of the elements of structure and services there specificed 'shall be considered unhabitable." * * * They are not concerned merely with assuring that the tenant receives what he pays for, nor with intangible comfort and enjoyment. When a tenant or other 'aggrieved party' in fact suffers an injury within the contemplation of these protective provisions, it would be incongruous to translate that injury into reduced rental value of the dwelling. 'Appropriate damages' under ORS 91.725 certainly includes compensation for the loss of life or health and the accompanying costs, * * *." 287 Or at 452.

Notwithstanding the majority, it is my opinion the plaintiff cannot recover on her theory for the breach of a "warranty of habitability" under the Residential Landlord

---

[3] I would simply answer the plaintiff's "negligence per se" argument by saying that there is no underlying common law negligence action in which the trial court could substitute the statutory standard of care for that of a reasonably prudent person. *Bob Godfrey Pontiac v. Roloff,* 291 Or 318, 324, 630 P2d 840 (1981); *Miller v. City of Portland,* 288 Or 271, 604 P2d 1261 (1980).

In any event, it is difficult to understand why a plaintiff would want to use a "negligence per se" theory when a violation of the Residential Landlord and Tenant Act imposes strict liability.

and Tenant Act because she has not pleaded that theory in her amended complaint. Nowhere does the amended complaint use the term "warranty" or "habitability" and it does not directly or indirectly refer to the provisions of ORS 91.770. If a plaintiff wants to allege two or more theories of recovery, each must be alleged in the complaint. *Gardyjan v. Tatone,* 270 Or 678, 680-81, 528 P2d 1332 (1974). *Blake v. Webster Orchards,* 249 Or 348, 352-53, 437 P2d 757[4] (1968).

## IMPLIED WARRANTY OF HABITABILITY

The plaintiff also contends that she is entitled to recover on the alternate theory that the defendants breached an implied warranty of habitability separate and apart from any statute.

Cases from other jurisdictions hold that a lease creates an implied warranty of habitability. This warranty is based upon the proposition that a residential lease is a contract between landlord and tenant and not a conveyance of land. The plaintiff in her petition for review cited *Pugh v. Holms,* 486 Pa 272, 405 A2d 897 (1979); *Kamarath v. Bennett,* 568 SW2d 658 (Tex 1978); *Teller v. McCoy,* 253 SE2d 114 (W.Va. 1978); *King v. Morehead,* 495 SW2d 65 (Mo 1973); *Mease v. Fox,* 200 NW2d 791 (Iowa 1972); *Jack Spring, Inc. v. Little,* 50 Ill 2d 351, 280 NE2d 208 (1972); *Morningstar v. Strich, et al,* 326 Mich 541, 40 NW2d 719 (1950).

The plaintiff cannot recover under this theory for the

---

[4]Although the *Gardyjan* and *Blake* cases were decided prior to the adoption of the Oregon Rules of Civil Procedure, it is my opinion that they accurately state the current law.

ORCP 18 A. provides:

"A pleading which asserts a claim for relief, whether an original claim, counterclaim, cross-claim, or third party claim, shall contain:

"A. A plain and concise statement of the ultimate facts constituting a claim for relief without unnecessary repetition.

The Council on Court Procedures, Staff Comment to Rule 18 is in part as follows:

"The Council decided to retain fact pleading as opposed to notice pleading, *i.e.,* to retain a requirement of fairly specific description of facts as opposed to adopting the less specific fact description allowable in federal courts. * * * The necessity of pleading ultimate facts retains the present Oregon requirements of pleadings facts at a fairly specific level. * * *."

*See Welch v. Bancorp Managment Services,* 296 Or 208, 221, 675 P2d 172 (1983).

same reasons that she cannot recover under the Residential Landlord and Tenant Act. The plaintiff in her amended complaint has not pleaded a theory of "implied warranty of habitability."

## RESTATMENT (SECOND) OF PROPERTY § 17.6

In 1976 the American Law Institute promulgated and adopted Restatement (Second) of Property. Section 17.6 reads as follows:

"Landlord Under Legal Duty to Repair Dangerous Condition"

"A landlord is subject to liability for physicial harm caused to the tenant and others upon the leased property with the consent of the tenant or his subtenant by a dangerous condition existing before or arising after the tenant has taken possession, if he has failed to exercise reasonable care to repair the condition and the existence of the condition is in violation of:

"(1)   an implied warranty of habitability; or

"(2)   a duty created by statute or adminstrative regulation."

The plaintiff has not cited or relied upon Restatement (Second) of Property.

The reporter's note to section 17.6 states that the section is new and is not based upon any specific section of the Restatement (Second) of Torts. This court has not had occasion to consider section 17.6.[5]

Comment **a** to section 17.6 explains the rationale:

"Insofar as a duty created by statute or administrative regulation is concerned, the rule of this section is based on the assumption that the statute or regulation represents a legislative determination of the standard of conduct required of the landlord, so that the violation constitutes negligence per se * * *. The tort liability of the landlord in this situation tends to increase the likelihood that the will of the legislature as expressed in the statute or regulation will be effectuated."

It seems obvious that if Oregon decided to follow section 17.6 the tenant's cause of action against the landlord

---

[5]This court did consider Restatement (Second) of Property § 17.3 in *Woolston v. Wells,* 297 Or 548, 559, 687 P2d 144 (1984).

could be based upon the negligent violation of the statutory duties set out in the Residential Landlord and Tenant Act. This would require a retreat from *Brewer v. Erwin, supra,* which in effect imposes strict liability upon the landlord for personal injury to the tenant for violation of the Residential Landlord and Tenant Act.

To follow the other prong of section 17.6, the Oregon Supreme Court would be required to determine if a residential lease creates an implied warranty of habitability. Comment **a** to section 17.6 continues:

> "Chapter Five of this Restatement takes the position that there is an implied warranty of habitability by the landlord in regard to residential property. The implied warranty of habitability is the basis of a duty on the landlord to maintain the property in a habitable condition. * * *."

## CONCLUSION

There are many questions to be answered. Should Oregon follow Restatement (Second) of Property § 17.6? This is probably the most fundamental issue underlying this entire problem of landlord's liability for the tenant's personal injuries. If we "adopt" Restatement (Second) of Property § 17.6, what happens to Restatement (Second) of Torts § 356? In personal injury cases, would the role of the Residential Landlord and Tenant Act be reduced to furnishing a standard of care to a § 17.6 action? Would it be wise to retreat from *Brewer v. Erwin, supra,* which now imposes strict liability in personal injury actions?

To make Restatement (Second) of Property § 17.6 run on both cylinders, would it be necessary for Oregon to recognize that a residential lease creates an implied warranty of habitability independent of any statute? Separate and apart from the Restatement, should Oregon allow recovery for a tenant's personal injuries based upon the breach of an implied warranty of habitability?

The first sentence of ORS 91.770(1) is: "A landlord shall at all times during the tenancy maintain the dwelling unit in a habitable condition." It could be argued that this sentence provides for a general statutory obligation in the nature of an express warranty of habitability. On the other hand, the wording of the statute which follows, including the

phrase "For purposes of this section," indicates that the specific statutory obligations spelled out in subdivisions (a) through (k) are exclusive and there is no general obligation. This is another one of the unanswered problems not addressed in the briefs or the majority opinion.

If ORS 91.770(1) provides for a general statutory obligation to maintain the dwelling unit in a habitable condition, then the landlord's duty is the same as under an implied warranty of habitability—only the source of the duty is different. This could have been important to the plaintiff in this case. If she had filed the proper pleadings, it would have saved her from arguing that "the patio deck" was a "floor" and that the "rain water" was "debris."

We are prevented from considering the above questions in this case because the plaintiff has not raised the issues or has failed to plead them. The concurring opinions of Lent, J. and Carson, J. point out other problems that should receive the consideration of this court.

This is not a situation where we have gathered under an oak tree with bowed heads for the purpose of burying the doctrine of *caveat lessee*. That doctrine was cremated by the legislature when it passed the Residential Landlord and Tenant Act in 1973.

Restatement (Second) of Torts § 356, the Residential Landlord and Tenant Act, implied warranties of habitability, and Restatement (Second) of Property § 17.6 all concern the liability of a landlord to the tenant for personal injuries arising from a dangerous condition on the leased premises. All of them are potentially interrelated in different combinations. Instead of considering only a part of the overall problem, the majority should have waited for the proper case to consider the entire package.

Because I think that we should wait for a different case, I would affirm the trial court and Court of Appeals.