Argued and submitted January 14, reversed and remanded April 9, 1986

HALL et al,
*Respondents,*

*v.*

WARRINGTON,
*Appellant.*

(82-0674C; CA A33096)

717 P2d 183

Kathryn H. Clarke, Portland, argued the cause and filed the brief for appellant.

Lee Aronson, Portland, argued the cause for respondents.

With him on the briefs were James C. Carter, Portland, and Holmes, DeFrancq & Schulte, P.C., Portland.

Before Gillette, Presiding Judge, Pro Tempore, and Van Hoomissen and Young, Judges.

VAN HOOMISSEN, J.

## VAN HOOMISSEN, J.

This is an action for fraud in a real estate transaction brought by the purchasers against the seller.[1] Defendant appeals from a judgment for plaintiffs on a jury verdict. He contends that the trial court erred in instructing the jury and in receiving in evidence the written report of plaintiffs' expert witness. The dispositive issue is whether plaintiffs' complaint stated a claim for misrepresentation as to future conduct.

Defendant purchased the Bridle Lane Apartment complex in 1978. Later that year, one of the apartments had a flooding problem which resulted from inadequate drainage on property to the south of defendant's property. Flooding also occurred twice in 1979. Defendant installed an asphalt berm and a large storm drain and catch basin with a sump pump in an effort to alleviate the flooding problem. In 1980, defendant decided to sell the property. He discussed the flooding problem with his broker. In June, he obtained a report from Bryan Engineering that could be given to a prospective buyer.

About that time, plaintiffs contacted Maier, a real estate broker, regarding investment opportunities. In July, 1980, Maier saw an advertisement placed by defendant in a newspaper, advertising a "perfect condo conversion project." He told plaintiffs about the advertisement. They viewed the Bridle Lane Apartment complex, examined its books and decided to make an offer for the property. Maier testified that, as of that date, there had been no discussion of the flooding problem and that he had no knowledge of the Bryan report.

On August 3, defendant made a counter-offer. On August 5, Mr. Hall and Maier met with defendant. They discussed possible condominium conversion and financing. They also discussed flooding. Maier testified that defendant denied any flooding problem, and Hall confirmed Maier's testimony. Defendant testified that he had shown Hall a picture of the apartment that had been flooded and that he had discussed with him his anticipated legal action against the developer of the property to the south, the source of the

---

[1] Defendant filed a third party complaint for indemnity against the parties who sold the property to him. Before trial the third party action was severed from the underlying action. The trial court's amended judgment contains the findings required by ORCP 67B.

flooding problem. On August 6, Hall and defendant walked around the property. Hall testified that, while he was standing on the berm, he questioned defendant about whether there had been any flooding and that defendant said that there had not been any problems. Defendant admitted that statement; however, he testified that he and Hall had walked around the outside of the apartment that had been flooded.

On August 12, the parties signed a land sale contract. The purchase price was $1,500,000, plus an additional $50,000 to be paid by plaintiff to Maier. The contract did not provide for individual lot mortgage releases, but defendant indicated that he would give them. Those releases were required to convert the apartment units to condominiums. Plaintiffs subsequently prepared a "Supplemental to Land Sales Contract," which provided that defendant would give them individual releases; however, defendant did not sign that document.

In November, 1980, the Halls hired Blanding to assist them in converting the apartments to condominiums. Blanding was aware of the Bryan report. He contacted the Oregon Bank about financing but was told that the bank was not interested in making a loan. Blanding believed that it would be difficult to get loan approval in view of the flooding problem. In March, 1981, he sent the Bryan report to plaintiffs. Hall testified that that was the first time he had ever seen that report. That same month, the apartment was flooded again from the south. Plaintiffs spent $33,060 to repair the damage and to build a retaining wall in the hope of preventing future flooding damage. In February, 1982, the property was flooded from the north.

Plaintiffs' complaint alleged in part:

"III

"At or about the time of the above described transaction, defendant represented or failed to disclose as follows:

"1.   Represented that the property was suitable for condominium conversion;

"2.   Represented that no condition existed that would make the property ineligible for approval of Federal Mortgage Guarantee;

"3.  Represented that any and all material defects in the property had been disclosed to plaintiff [sic];

"4.  Failed to disclose that the property was subject to annual flooding during periods of heavy rainfall due to inadequate storm sewers and dikes.

"IV.

"Such representations and/or nondisclosures were false in that the property was subject to annual flooding during periods of heavy rainfall due to inadequate storm sewers and dikes. As a result of said condition financing approval for condominium conversion could not be obtained."

At trial, plaintiffs amended their complaint to conform to the proof and added a fifth fraud claim:

"Represented that the property had not been flooded."

Plaintiffs' appraiser testified that in August, 1980, basing the value on use of the property as apartments rather than as condominiums and taking the flooding problem into account, the fair market value of the property was $1,250,000. The appraiser's written report was received in evidence over defendant's objection that the evidence was cumulative.

The trial judge instructed the jury as to the allegations of misrepresentation in plaintiffs' complaint. The court also instructed the jury:

"*Plaintiff [sic] has alleged fraud based on the promise to do something in the future.* To prevail, plaintiffs must prove that at the time of making the promise the defendant did not intend to perform in the future or that defendant made the promise recklessly disregarding whether the promise could be performed." (Emphasis supplied.)

Defendant excepted to that instruction. The jury returned a verdict for plaintiffs for $330,000 in general damages and $250,000 in punitive damages.

■   Defendant first contends that the trial court erred in instructing the jury that plaintiffs had alleged fraud based on a promise of future performance when there was no allegation

in the pleadings about future conduct.[2] The pleadings only contained allegations of fraud based on flooding. They did not contain allegations of fraud based on any future promise to give individual lot mortgage releases. The instruction based on a promise to do something in the future permitted the jury to find defendant liable on a theory not raised by the pleadings. That was error requiring a new trial.[3]

■ Even though we have reversed and remanded, we still need to consider defendant's second assignment because it is likely to arise on retrial. He contends that the trial court erred in instructing the jury that plaintiffs could recover both the cost of repairs or improvements made necessary by the flooding, together with the difference in the value of the property as represented and as it actually existed the day of the sale. He argues that recovery of the difference between the sum plaintiffs paid for the property and the amount the property was actually worth at the time of purchase compensated them for their out-of-pocket loss and made them whole. On retrial, the trial court should make it clear that the jury may award recovery only for the repairs and improvements necessitated by the flooding or award the difference in value of the property as represented and its actual value on the date of sale.

■ We decline to consider defendant's third assignment, that the trial court erred on hearsay grounds in receiving in evidence plaintiffs' expert's written report. At trial, defendant only objected on the ground that the evidence was cumulative. *City of Hillsboro v. James & Yost,* 240 Or 433, 437, 402 P2d 511 (1965).

Reversed and remanded.

---

[2] Plaintiffs contend that the alleged error was not preserved. We disagree. They also contend that the instruction was not prejudicial, because the trial court had instructed the jury as to the specific allegations of plaintiffs' complaint. *See Valdin v. Holteen and Nordstrom,* 199 Or 134, 160, 260 P2d 504 (1953). However, the court also instructed the jury that "Plaintiff [sic] alleged fraud based on a promise to do something in the future." That instruction could have led the jury to believe that fraud based on a promise to do something in the future was a part of plaintiffs' pleadings. Because we are unable to determine whether the jury allowed recovery on the basis of the purported promise, we remand the case for a new trial.

[3] *Gardyjan v. Tatone,* 270 Or 678, 680-81, 528 P2d 1332 (1974); *Blake v. Webster Orchards,* 249 Or 348, 437 P2d 757 (1968); *Macomber v. Cox,* 249 Or 61, 435 P2d 462 (1968); *St. Paul Mercury Ins. Co. v. Baughman,* 61 Or App 534, 657 P2d 1254 (1983).